**Larry NEWTON, Plaintiff–Respondent,**

v.

**Teresa MANLEY, Defendant–Appellant.**

No. 17032.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 20, 1992.

C.H. Parsons, Jr., Joe Z. Satterfield, Parsons, Mitchell, Wilson & Satterfield, P.C., Dexter, for plaintiff-respondent.

David G. Beeson, Stephen C. Wilson, Buerkle, Beeson & Ludwig, Jackson, for defendant-appellant.

MAUS, Presiding Judge.

In this action, the petition of plaintiff Larry Newton alleged that he sustained personal injuries by reason of defendant Teresa Manley's negligent operation of an automobile. Thirty-two days after Manley was served with a summons and copy of the petition, Newton obtained a default judgment against her in the amount of $100,000. Forty-two days thereafter, Manley filed a motion to set aside that default judgment. Manley appealed the trial court's denial of that motion. By an opinion filed April 26, 1991, this court reversed the judgment of the trial court and remanded the case for further proceedings. Thereafter, on October 16, 1991, the application of plaintiff Larry Newton to transfer the case to the Supreme Court was sustained. On January 28, 1992, the Supreme Court ordered the case retransferred to the Missouri Court of Appeals, Southern District. With the alteration of this initial paragraph, the original opinion and dissenting opinion of this court are readopted. The following is a summary of the factual background.

The petition alleged that on July 18, 1987, Newton was leaning on the windowsill of an automobile which was stopped on a parking lot when Manley suddenly accelerated the automobile, striking Newton. He charged that Manley was negligent in that she "carelessly failed and neglected to exercise the highest degree of care", she "failed and neglected to keep a reasonable and careful sufficient lookout" and she suddenly accelerated the automobile when she knew or should have known the vehicle would strike Newton and did not give an adequate and timely warning. The petition concludes that Newton sustained injuries to virtually every part of his body, including a severely fractured right wrist. He prayed for judgment in such sum as may be determined to be fair and reasonable under the circumstances.

Plaintiff Larry Newton was the only witness at the hearing on July 19, 1988, as a result of which the default judgment was rendered. He gave the following account of the accident:

"A. The accident occurred when I was talkin' to her through the window of the car, leaning against the car, and no verbal abuse, no yellin' or nothin', and she just took off real fast, and as she took off it knocked me down to the pavement, either the car—the car did strike me and knock me down to the pavement, and it broke my wrist."

Medical records were admitted. Those records included the following diagnosis: "[D]isplaced intra-articular Smith's fracture of the right wrist." Treatment was "reduction of Smith's fracture with external fixation and internal pinning." The doctor's notes included the following. "I think this man does have a significant fracture here and I think that he probably will have some residual joint irregularity. However at this time I feel that his alignment has been improved sufficiently that it will be in an acceptable range." Newton testified his grip wasn't as good as it had been and he had some trouble lifting. His medical expenses were approximately $6,000 and his lost wages were approximately $4,000. At the conclusion of the testimony, the following exchange took place.

"MR. SATTERFIELD: Your Honor, I have nothing further.

THE COURT: How much?

MR. SATTERFIELD: Excuse me?

THE COURT: How much you want?

MR. SATTERFIELD: We're asking for a judgment of $100,000.00.

THE COURT: All right."

On August 3, 1988, Newton's attorney sent a copy of the default judgment to the District Claims Office of the Farm Bureau Insurance Company. The transmittal letter contained the following paragraph.

"It is my understanding that the defendant, Teresa Manley, at the time of the accident was operating a motor vehicle which was owned by Scott Wyett of Caruthersville, Missouri. It is also my understanding that the automobile owned by Mr. Wyett was insured by Farm Bureau Insurance Company."

On August 30, 1988, Manley, represented by counsel employed by Farm Bureau, filed a motion to set aside the default judgment. The motion alleged Manley had a meritorious defense and stated detailed facts to establish that at the time of the incident Newton was threatening Manley and her companion Scott Wyett, and that Newton grabbed the automobile while she was driving away to escape violence. It further alleged that the insurance company had no notice of the action and "there has been no conduct which was intentionally or recklessly designed to impede the judicial process, and this motion to set aside the default judgment has been filed with the court as promptly as possible after learning the applicable facts."

Manley testified by deposition at the hearing on that motion. Her testimony was to the following effect. She was 23 years old and had been divorced for three years. Approximately two years ago, Newton was her boyfriend but she terminated the relationship. She later started going with Scott Wyett. On the evening in question, she and Scott had gone to the show and were riding around. While driving they passed a car driven by Newton. Newton on prior occasions had threatened Scott and Manley. When the cars passed, Newton gestured at them and verbally threatened them. Manley drove to a service station lot and was turning back when the motor died. Newton drove in behind them and got out. He started toward them. He had a chain wrapped around his left hand and was cursing and threatening them. She re-started the motor and was driving off when Newton grabbed the window and then fell to the blacktop.

Scott's grandfather was Curtis Eiceman who was the local agent for Farm Bureau. Manley and Scott told Eiceman of the incident and later gave a statement to an adjuster. When Manley received a letter from Newton's attorney, and when she received the summons and petition, Manley took them to Eiceman's office where they

were copied. The automobile was owned by Scott's step-father. It is apparent he was the named insured and the automobile Manley was driving was the described automobile in a liability insurance policy issued by Farm Bureau.

Eiceman testified that he was aware of the incident. Farm Bureau had received a lien letter from an attorney (not present counsel) who then represented Newton in respect to the accident. A Farm Bureau adjuster investigated the incident and later closed the file. A copy of the summons to and petition against Manley was not received in Eiceman's office. It was stipulated that Eiceman's secretaries and an agent employed in his office would testify that to their knowledge Manley did not bring a petition and summons to the office. The trial court made no findings of fact or conclusions of law. It entered an order in general terms denying the motion to set aside the default judgment.

Manley's point on appeal is that by reason of amended Rule 74.05 (effective January 1, 1988), the trial court erred in not setting aside the default judgment of July 19, 1988. The directly applicable part of that Rule reads:

"Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. An order setting aside an interlocutory order of default or a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a result of the default by the party who requested the default." Rule 74.05(c).

■ Newton first argues Manley is not entitled to relief for the following reason. "There was no evidence presented in this case of sickness, clerical error, mistake or any other excuse or explanation of any kind. Therefore, the record is completely void of any evidence of good cause." This is essentially an argument that such relief should be denied because of Manley's negligence in failing to file an answer.

"While prior Rule 74.05 also stated that a default judgment could be set aside for good cause, the courts had interpreted this rule to mean that a defendant who negligently failed to file a timely answer should be denied relief. Amended Rule 74.05 changes this standard for setting aside a default judgment by making it clear that good faith mistakes do constitute good cause, and a default judgment can now be vacated *even if the movant* has *negligently failed to file a timely answer."* Laughrey, Judgments—The New Missouri Rule, J.Mo.Bar 11, 15 (Jan–Feb 1988). (Emphasis added.)

Newton's first argument has no merit under the amended Rule. *Gibson by Woodall v. Elley,* 778 S.W.2d 851 (Mo.App. 1989).

Newton next argues that relief was properly denied because "[t]he fact is that Defendant Teresa Manley does not have a meritorious defense to the action brought against her by Plaintiff Larry Newton." To establish Manley has no defense, Newton emphasizes the inconsistency between the testimony of Manley and Eiceman concerning the summons and petition, Manley's failure to present the testimony of Scott Wyett and the asserted impeachment of her testimony by a letter she wrote. Therefore, he concludes the trial court found Manley's motion testimony not credible and that she "failed in her attempt to establish a meritorious defense." He relies on *Robson v. Willers,* 784 S.W.2d 893 (Mo. App.1990).

■ This argument misconceives the provisions of Rule 74.05(c) concerning the existence of a meritorious defense. That Rule does not require a movant to establish a meritorious defense by the preponderance of the evidence. The relevant part of the Rule provides a default judgment may be set aside "[u]pon motion stating facts constituting a meritorious defense." In view of that language, it could be argued

that in a proceeding under the new Rule, as distinguished from an independent proceeding in equity, see *Volvo Finance North America v. Raja,* 754 S.W.2d 955 (Mo.App. 1988), the reception of evidence to establish a defense is inappropriate. However, that has often, without question, been done in a proceeding under the Rules. In this case, it is not necessary to reach that issue.

The movant's burden in respect to a meritorious defense has been clearly stated.

"In addition to the requirement of good cause mandated by Rule 74.05(c), the Rule also imposes a requirement upon the moving party to state facts which would constitute a meritorious defense to the plaintiffs' claims. This does not mean, however, that such a defense must be conclusively proven. It is enough that some showing be made of the existence of at least an arguable theory from which a defense may be made." *Gibson by Woodall,* 778 S.W.2d at 855.

That maxim has been applied in an independent proceeding in equity. *Boyer v. Church,* 573 S.W.2d 444 (Mo.App.1978). *Robson v. Willers,* supra, cited by Newton, does not aid him. In dictum, *Robson* comments on the credibility of a possible defense. However, the case recognizes the general rule and finds the motion to set aside a default judgment was properly denied because of the defendant's negligence. In *Robson v. Willers,* supra, the court states the Rule in the following terms.

"A defendant seeking to set aside a default judgment, although not required to present extensive evidence or a full-blown defense, is required to make some showing to the court of at least an arguable theory of defense." *Robson,* 784 S.W.2d at 895.

The limited function of the motion court in this case is expressed in a paraphrase of a well-stated proposition in *Gibson by Woodall v. Elley,* supra.

"It [was] not for [the motion] court to decide whether or not [Teresa Manley] should prevail upon [her] defense, but rather if a meritorious defense existed to [Newton's] charges. Given the circumstances of the instant case a trier of fact *could* find that the actions of [Teresa Manley] were [justified and] the cause of [Newton's] injuries [was his own conduct]. Whether or not a jury *would* so find is not a proper determination for this court." *Gibson by Woodall,* 778 S.W.2d at 855. (Emphasis in original.)

Manley's motion alleged and her testimony presented facts, as distinguished from conclusions, which would permit a jury to reach that determination. Newton's second argument is not persuasive.

■ Finally, Newton argues that Manley "has intentionally or recklessly impeded the judicial process throughout this case." He supports that argument by reference to counsel's delay in filing a brief in the trial court, the institution of a premature appeal and delay in filing the legal file with this court. Such delay may demonstrate her counsel's lack of diligence. However, "conduct that is not intentionally or recklessly designed to impede the judicial process" referred to in Rule 74.05(c) is the conduct of a defendant which permits the entry of a default judgment.

As noted, the default judgment was entered 32 days after Manley was served with process. She filed her motion to set aside that default judgment within 42 days thereafter. Whether or not the testimony of Manley that she delivered the summons and petition to Eiceman is accepted is not decisive. There is nothing in the record to establish the default judgment did not result from a mistake by either Manley or Eiceman. Moreover, there is no evidence either Manley or Eiceman engaged in conduct designed to impede the judicial process.

There is no substantial evidence to support the denial by the trial court, it is against the weight of the evidence and erroneously applies the law. Cf. *Gibson by Woodall v. Elley,* supra. The judgment of the trial court denying the motion is reversed. The motion to set aside the default judgment is sustained. The cause is remanded for further proceedings not inconsistent with this opinion.

CROW, J., concurs.

PREWITT, J., dissents and files dissenting opinion.

PREWITT, Judge, dissenting.

I agree with the comments in the principal opinion regarding "meritorious defense" but no cause, much less "good cause" was established for failing to respond to the summons and petition. Absent both, defendant has not met her burden to receive relief under Rule 74.05(c). *McClelland v. Progressive Cas. Ins. Co.,* 790 S.W.2d 490, 492 (Mo.App.1990).

I agree that defendant's negligence is not an issue, but lack of it should not change the result. Defendant says she turned over the suit papers to the insurance agent, but other evidence indicates she did not. Even the motion filed by her attorneys seems to contradict defendant's testimony as it states that the insurance company did not receive "notice" of the suit until after the judgment was entered. The trial judge can disbelieve uncontroverted evidence of "good cause". *McClelland* at 492–493. The trial court was justified in not believing defendant and finding she intentionally ignored this action. As no findings of fact were made, all fact issues are considered as found in accordance with the result. Rule 73.01(a)(2).

The majority opinion allows defendant to ignore the summons and petition until after judgment with impunity. Then, in a proceeding to set aside the judgment, it puts the burden on plaintiff to establish "conduct that is ... intentionally or recklessly designed to impede the judicial process."

I respectfully dissent.