**Lawrence Leroy MYERS, Plaintiff–Respondent,**

v.

**PITNEY BOWES, INC., Defendant–Appellant.**

**No. 20160.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 30, 1996.

Clark H. Cole, Keith A. Rabenberg, Armstrong, Teasdale, Schlafly & Davis, St. Louis, for defendant-appellant.

Mark E. Gardner, Mary H. Neal, Carmichael, Gardner & Clark, Springfield, for plaintiff-respondent.

## PER CURIAM.

Pitney Bowes, Inc. (Defendant) appeals the denial of its motion to set aside a default judgment entered in favor of Plaintiff, Lawrence Leroy Myers. We reverse and remand.

In his petition filed in December, 1994, Plaintiff sought a declaratory judgment concerning his entitlement to benefits, including disability benefits, under plans provided by Defendant. Included in the petition were allegations that he had been employed by Defendant since 1976, and as a result he was entitled to certain benefits, including disability benefits described in a "Pitney Bowes Benefit Plans" pamphlet, portions of which were attached; that he had requested a temporary leave of absence on April 20, 1990, and in that same month had applied for disability benefits under the plan, which were denied, as was his appeal from that decision; that he was told by Defendant's agents that in order to remain employed by Defendant he should give written notice that he was able to return to work on January 1, 1991, which he did (although he also alleged that the statement was not true); that he received medical benefits from Defendant through December, 1992; that he was told by Defendant's agents to apply for social security disability benefits, and that if those benefits were granted he would be entitled to receive benefits from Defendant; that on March 25, 1992 he was determined to be disabled as defined in the Social Security Act and was found to be entitled to social security disability benefits retroactive to October 1, 1990; "[t]hat plaintiff has been entitled to receive disability benefits from defendant pursuant to [the portions of the plan attached to the petition] since April 20, 1990 and continues to be entitled to receive such benefits until reaching age 65"; that in addition to disability benefits he is entitled to "other benefits including life insurance, supplementary life insurance, and health insurance" as set forth in other portions of the "Pitney Bowes Benefit Plans" pamphlet attached; that he had been "wrongfully denied all such benefits"; and that Defendant "is estopped from asserting a lack of timeliness in pursuing this claim for the reason that defendant mislead plaintiff as set forth above and caused him to believe that his employment was continuing and that the denial of benefits would be rectified." The prayer of the petition sought a declaratory judgment concerning the "respective status, rights, obligations and legal relationships of the parties herein and particularly to adjudge and declare that plaintiff is entitled to receipt of disability benefits, as well as life insurance, supplementary life insurance and health insurance, retroactive to April 20, 1990 and continuing until plaintiff reaches the age of 65 . . . ."

Defendant did not respond to Plaintiff's petition, although its registered agent was duly served, and the trial court entered an "Interlocutory Judgment on Default" on January 17, 1995. On February 23, 1995, the court entered a Judgment against Defendant in which it held that "plaintiff is awarded and defendant is ordered to provide to plaintiff, disability benefits, as well as life insurance, supplementary life insurance and health insurance benefits retroactive to April 20, 1990 and continuing until plaintiff reaches the age of 65 . . . ." [1]

Defendant filed a Motion to Set Aside Default Judgment (the motion) pursuant to

---

1. Although Defendant contends on this appeal that the judgment is void because of vagueness, we do not reach that issue.

Rule 74.05(d)[2] on March 24, 1995, which was denied on March 30, 1995. Defendant now appeals the denial of that motion and presents four points of alleged error. Because we find that its first point is dispositive, we do not address the remaining points.

Defendant's first point is premised on the theory that the trial court abused its discretion in denying the motion to set aside the default judgment, filed pursuant to Rule 74.05(d). The current version of Rule 74.05(d) indicates a more liberal posture concerning setting aside default judgments. *LaRose v. Letterman*, 890 S.W.2d 347, 351 (Mo. App.S.D.1994); *Gibson v. Elley*, 778 S.W.2d 851, 853, n. 1 (Mo.App.W.D.1989). That rule provides that a default judgment may be set aside "[u]pon motion stating facts constituting a meritorious defense and for good cause shown...." It defines "*good cause*" as including a mistake or conduct that is not "intentionally or recklessly designed to impede the judicial process," and requires that the motion be made within a reasonable time not to exceed one year.

■ The trial court has the discretion to set aside a default judgment, and its decision will not be interfered with unless an abuse of discretion is found. *Bell v. Bell*, 849 S.W.2d 194, 197 (Mo.App.W.D.1993); *Moore v. Dahlberg*, 810 S.W.2d 730, 732 (Mo.App.W.D. 1991). The discretion not to set aside a default judgment, however, is a good deal narrower than the discretion to set one aside. *LaRose v. Letterman*, 890 S.W.2d at 350. Thus, appellate courts are more likely to reverse a judgment which fails to set aside a default judgment than one which grants that relief. *Moore v. Dahlberg*, 810 S.W.2d at 732. This is because of the law's distaste for default judgments and its preference for tri-

als on the merits. *See LaRose v. Letterman*, 890 S.W.2d at 350; *Gibson v. Elley*, 778 S.W.2d at 854.

■ Defendant's motion alleged that its failure to answer or otherwise appear was the result of mistake or conduct that was not intentionally or recklessly designed to impede the judicial process. The motion explained that after being served, the lawsuit was transmitted to Defendant's Connecticut headquarters. During this period, Defendant was "undergoing reorganization of its Human Resources Department and Disability Department. In addition, the Manager of the Disability Department, the person who would normally respond to the allegations in the lawsuit, retired ... causing a realignment in responsibilities." Accordingly, the motion alleged, "this lawsuit did not come to the attention of someone able [to] respond to the allegations in time to answer timely under the Missouri Rules of Civil Procedure." The motion also alleged that "[e]ventually, the lawsuit came to the attention of Marcy Macdonald, Counsel, Employee Benefits & Statutory Compensation Plans, but the default judgment had already been entered. She immediately thereafter, on March 22, 1995, contacted ... defendant's local counsel in Missouri," which resulted in the filing of the motion on March 24. As support for the foregoing assertions, Defendant also submitted the affidavit of Ms. Macdonald which acknowledged that she had reviewed the Motion To Set Aside Default Judgment; that she had personal knowledge of the facts stated in the motion; and that such facts were true and correct to her best knowledge and belief.[3]

■ It appears from the record before us that, in denying the motion, the trial judge

---

2. All references to rules are to Missouri Rules of Court (1995), unless otherwise noted. Rule 74.05 was amended in 1987, effective January 1, 1988, with subsections (a), (b) and (c). The rule was amended again in 1993, effective January 1, 1994, and subsection (c) became subsection (d). When we refer to the prior version, we are referring to the version before the January 1, 1988 revision.

3. Plaintiff argues that this affidavit is defective and should be disregarded, in part because it did

not establish Ms. Macdonald's competence or personal knowledge of the facts. We disagree. He also contends that the affidavit was insufficient because it would not be admissible as evidence. While some of the matters contained in the motion to which the affidavit referred were stated in conclusory terms, they were also supported by factual statements. We also note that Rule 74.05(d) does not specifically require the filing of an affidavit in support of a motion under that rule.

found that Defendant had not shown good cause for its failure to appear. The good cause requirement of Rule 74.05(d) is satisfied by proving that the party in default did not recklessly or intentionally impede the judicial process. *Great S. Sav. & Loan Ass'n v. Wilburn,* 887 S.W.2d 581, 584 (Mo. banc 1994); *LaRose v. Letterman,* 890 S.W.2d at 351; *Plybon v. Benton,* 806 S.W.2d 520, 524 (Mo.App.W.D.1991). While the prior version of Rule 74.05 was interpreted to mean that a defendant who negligently failed to file a timely answer should be denied relief, the amended rule clarifies that " 'good faith mistakes do constitute good cause, and a default judgment can now be vacated *even if the movant* has *negligently failed to file a timely answer.'* " *Newton v. Manley,* 824 S.W.2d 522, 524 (Mo.App.S.D.1992) (quoting Laughrey, *Judgments—The New Missouri Rule,* J.Mo.Bar 11, 15 (Jan.–Feb. 1988)).

There is no evidence that Defendant engaged in conduct designed to impede the judicial process. *See Garner–Roe v. Anderson,* 894 S.W.2d 223, 227 (Mo.App.E.D. 1995); *Clark v. Brown,* 814 S.W.2d 634, 638 (Mo.App.S.D.1991). Upon discovery of the default judgment, Marcy Macdonald verified that she immediately contacted Defendant's local counsel in Missouri, and the motion to set aside was filed two days later.

■ It is clear that the trial court's discretion to forgive the mishandling of legal documents has been considerably broadened by the provisions of current Rule 74.05(d). *McClelland v. Progressive Casualty Ins. Co.,* 790 S.W.2d 490, 493 (Mo.App.S.D.1990). Where a reasonable doubt exists as to whether the conduct was intentionally designed or irresponsibly calculated to impede the work of courts, it should be resolved in favor of good faith. *Gibson v. Elley,* 778 S.W.2d at 855. In the instant case, the mistakes and internal mishaps have not been shown to constitute intentional or reckless behavior designed to impede the judicial process. *See Clark v. Brown,* 814 S.W.2d at 639; *Gibson v. Elley,* 778 S.W.2d at 854. We hold, there-

fore, that Defendant presented facts sufficient to constitute good cause for its failure to appear and defend as required by Rule 74.05(d).

Plaintiff relies upon *Robson v. Willers,* 784 S.W.2d 893 (Mo.App.W.D.1990), and *Hellwege v. Lamb,* 739 S.W.2d 594 (Mo.App.E.D. 1987). These cases are distinguishable because those courts relied on case law decided prior to the adoption of the new Rule 74.05. *Bell v. Bell,* 849 S.W.2d at 198. Additionally, in *Robson,* the conduct of appellants amounted to a conscious choice to ignore the summons which amounted to recklessness. *Id.*

■ Rule 74.05(d) also requires that the motion be filed within a reasonable time. The instant motion was filed 29 days after the entry of the default judgment. The sooner the mistake is discovered, and acted upon, the more receptive the courts should be to a motion to set aside. *Bell,* 849 S.W.2d at 198.[4] "Prompt action to set aside a judgment is less threatening to the stability of the final judgment rule than action taken substantially later." *Id.* We find that the motion was filed within a reasonable time.

■ A motion under Rule 74.05(d) must also demonstrate the existence of a meritorious defense. Although there is no universal standard which establishes the components of a "meritorious defense," it has been interpreted to mean "any factor likely to materially affect the substantive result of the case." *LaRose v. Letterman,* 890 S.W.2d at 351. It would be inconsistent with the distaste for default judgments to take an overly restrictive approach to the meaning of the word "defense." *Bell v. Bell,* 849 S.W.2d at 199. Consistent with the liberal spirit of the amended Rule 74.05, the requirement of a "meritorious defense" is not intended to impose a high hurdle; it is designed to allow a matter to be resolved on its merits where there are legitimate matters to be considered. *Id.* This portion of the rule requires only that some showing be made of the existence of at least an arguable theory of defense. *Clark v. Brown,* 814 S.W.2d at 642–

---

**4.** In *Newton v. Manley,* 824 S.W.2d at 525, this court reversed a judgment denying a motion to set aside a default judgment which was filed 42 days after the entry of the judgment. In *Clark v.* *Brown,* 814 S.W.2d at 638, we affirmed an order setting aside a default based on a motion filed 36 days after the judgment was entered.

43; *Moore v. Dahlberg,* 810 S.W.2d at 732. The proffered defense need not be conclusively proven or established by a preponderance of the evidence. *Bell v. Bell,* 849 S.W.2d at 198; *Newton v. Manley,* 824 S.W.2d at 524. In passing on the sufficiency of the showing, it is not for this court to decide whether Defendant should prevail on its defense, but rather if a meritorious defense exists. *Newton v. Manley,* 824 S.W.2d at 525; *Gibson v. Elley,* 778 S.W.2d at 855.

■ Defendant's motion in the instant case alleged, among other things, that Plaintiff's claim was preempted by federal law because it concerned benefits under an employee benefit plan governed by the provisions of the Employment Retirement Income Security Act of 1974, otherwise known as ERISA (29 U.S.C. § 1001, et seq.); that Plaintiff effectively sought to modify the plan by claiming entitlement to benefits based on an alleged assurance by Defendant that receipt of social security benefits would establish his right to benefits under the plan; that Plaintiff failed to plead the necessary element that the denial of benefits was arbitrary and capricious; that Plaintiff claimed benefits which were contingent on his disability until age 65;[5] and that Plaintiff had admitted that he was able to work. Although Defendant presented additional defenses, this court need not address them.

29 U.S.C. § 1144(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." An "employee benefit plan" is defined in 29 U.S.C. § 1002(3) as including an "employee welfare

benefit plan" which is defined in § 1002(1) as "any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan ... was established or is maintained for the purpose of providing for its participants ... benefits in the event of sickness, accident, disability, death or unemployment...."

In the instant case, Plaintiff's petition alleged that "as an employee of defendant, [he] became entitled to certain benefits ... as described in the 'Pitney Bowes Benefit Plans' pamphlet." A part of the "pamphlet" was attached as an exhibit to the petition. Included were provisions stating that if an employee became disabled and unable to work, continuing income may be available through "Pitney Bowes benefit plans" which are provided by the company at no cost to the employee. Plaintiff, in oral argument to this court, admitted that there is an issue as to whether the claim was "preempted by ERISA." It is, therefore, at least arguable that Plaintiff's claim involved a plan governed by ERISA which is preempted by the application of federal law. *See St. Louis Children's Hosp. v. Commerce Bancshares, Inc.,* 799 S.W.2d 87, 91 (Mo.App.E.D.1990). ERISA preemption means that the trial court must apply federal law as embodied in ERISA as opposed to state contract law. *Id.; Maupin v. Hallmark Cards, Inc.,* 894 S.W.2d 688, 692 (Mo.App.W.D.1995); *In re Estate of Carroll,* 857 S.W.2d 848, 856–57 (Mo.App.W.D.1993).[6]

Plaintiff alleged in his petition, as a basis for his entitlement to benefits under the plan, that he was told by Defendant's agents that he would be entitled to receive such benefits

---

**5.** Defendant's point relied on referred to the fact that the judgment purported to award Plaintiff benefits, including disability benefits, until he was 65 which is contingent on his continued disability. In this regard, we note that the decision by which Plaintiff was found to be entitled to social security benefits was dated March 25, 1992, and contained the notation "Further Action Necessary." It found only that he was entitled through the date of the decision, and recommended that continuing entitlement to benefits be reviewed within one year. Defendant did not, however, develop this portion of the point in the argument section of its brief. Under such cir-

cumstances, that part of the point is abandoned. *See Wolfe v. State ex rel. Mo. Highway & Transp. Comm'n,* 910 S.W.2d 294, 298 (Mo.App.W.D. 1995).

**6.** Federal and state courts, however, have concurrent jurisdiction of actions brought by a participant to recover benefits due, to enforce rights under the plan, or to clarify rights to future benefits under the plan even though those actions are preempted by ERISA. 29 U.S.C. § 1132(e)(1) and § 1132(a)(1)(B); *Maupin v. Hallmark Cards, Inc.,* 894 S.W.2d at 692.

if he received social security benefits. The portions of the plan attached to the petition, however, contain no such provision. Defendant argues, therefore, that Plaintiff's claim constituted an attempt to modify the plan provisions contrary to federal law. In support, Defendant cites *Nachwalter v. Christie*, 805 F.2d 956, 959–60 (11th Cir.1986), in which the court acknowledged that ERISA preempts state common law doctrines such as estoppel, that oral modifications of ERISA plans are not permitted under federal law, and that a common law theory of estoppel cannot be used to alter that result. We agree with Defendant that this is a matter which, in the language of the cases cited above, is likely to materially affect the substantive result of the case and, therefore, constitutes a showing of a meritorious defense within the meaning of Rule 74.05(d).

■ In a related argument, Defendant asserts that Plaintiff failed to sustain his burden of proof under ERISA in that he failed to allege or prove that Defendant's denial of benefits was arbitrary or capricious. A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which event the standard of review is to determine whether the decision was arbitrary and capricious or an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989); *Bounds v. Bell Atlantic Enterprises F.L.T.D. Plan*, 32 F.3d 337, 339 (8th Cir. 1994); *St. Louis Children's Hosp. v. Commerce Bancshares, Inc.*, 799 S.W.2d at 95.

Here, the trial court was presented with the portion of the Pitney Bowes plan which requires that an applicant for long term disability "receive[ ] approval under the plan." Although it is far from decisive on this point, such a provision implies the exercise of discretion, as does the plan definition of "totally disabled."[7] The application of an arbitrary and capricious or abuse of discretion standard for review of the denial of Plaintiff's claims would reasonably be a factor which could materially affect the outcome of the case because, under them, courts are to apply a deferential standard of review and affirm reasonable interpretations of a plan. *See Cox v. Mid–America Dairymen, Inc.*, 13 F.3d 272, 274 (8th Cir.1993).

Defendant's motion also raised an issue concerning whether Plaintiff was in fact disabled. It pointed out that Plaintiff's petition included an admission that he had written a letter to Defendant on December 27, 1990 advising that he was able to return to work. Notwithstanding the fact that Plaintiff also alleged that the contents of the letter were untrue, Defendant argues that this statement, together with its contention that Plaintiff was not disabled under the provisions of the plan, constitutes a showing of a meritorious defense sufficient for Rule 74.05(d) purposes and is also supportive of its position that a denial of benefits was reasonable under the facts. We agree. The lack of a disability under the plan in question is a factor likely to materially affect the substantive result of the case. *See Cox v. Mid–America Dairymen, Inc.*, 13 F.3d at 275.

The trial court abused its discretion in denying the motion to set aside the default judgment in the instant case. Its order denying that motion is, therefore, reversed. Rule 74.05(d) also provides that "[a]n order setting aside ... a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a result of the default by the party who requested the default." This case is remanded with directions for the trial court to determine the reasonable attorney's

---

7. The plan documents attached to Plaintiff's petition contain the following definition: " 'Totally disabled' means you are unable, because of illness or injury, to work at your job for a period of up to 12 months. Following the first 12 months 'totally disabled' means you are unable, because of illness or injury, to work at any paying job for which you are reasonably qualified by education, training, experience, or capability."

fees and expenses incurred by Plaintiff as a result of the default and to sustain the motion to set aside the default conditioned on the payment of such fees and expenses.