**Beryl V. KELTNER, Plaintiff–Respondent,**

v.

**Garold W. LAWSON, Jr., Defendant–Appellant.**

No. 20559.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 13, 1996.

William C. Love, Harrison, Tucker & Hyde, Springfield, for defendant-appellant.

Mark Haseltine, Springer & Haseltine, Springfield, for plaintiff-respondent.

PARRISH, Judge.

Garold W. Lawson, Jr., (defendant) appeals the denial of a motion to set aside a default judgment. The judgment was entered in favor of Beryl V. Keltner (plaintiff) in an action for wrongful death arising out of an automobile accident. Defendant filed a motion to set the judgment aside in accordance with Rule 74.05(d), asserting he had a meritorious defense to plaintiff's claim and that there was good cause to set the judgment aside.

This court reverses the order denying the motion to set aside the default judgment. The case is remanded. The trial court is directed to set aside the default judgment and allow defendant a reasonable time in which to file an answer.[1]

Plaintiff and defendant were operators of motor vehicles that were involved in an accident. Plaintiff's wife was a passenger in the vehicle he was operating. She died several weeks later from injuries sustained in the accident.

Plaintiff filed this action January 11, 1995. Defendant was served with summons February 22, 1995. He promptly forwarded the summons and a copy of the petition to his automobile insurance carrier. The documents were received in the offices of the Atlanta Service Center of American International Group Services, Inc., (AIG) February 24, 1995, by Jennifer Hale. Ms. Hale was head of the litigation unit for AIG.

Ms. Hale assigned defendant's file to Melony Najim, an AIG litigation specialist. Ms. Najim contacted plaintiff's attorney by telephone March 2, 1995, and requested that he allow defendant additional time in which to plead. She talked to the attorney again March 3, 1995. He agreed to allow AIG until April 3, 1995, to plead.

On March 10, 1995, Ms. Najim resigned her position with AIG. There had been a high rate of turnover among the employees in AIG's litigation unit for some time prior to the time it received the summons and copy of the petition from defendant. All of the litigation department's employees were relatively new.

When Ms. Najim left AIG, the files that had been assigned to her were assigned to an AIG employee who was not in the litigation unit, John Riley. He was to work on the files until a replacement for Ms. Najim was hired.

An issue expected to be resolved by a case then pending in the Supreme Court of Missouri affected the amount of insurance coverage that would be available from AIG. It involved a question of stacking amounts of insurance coverage. Defendant's attorney proposed a settlement agreement, the terms of which included payment of a sum of money immediately and awaiting the outcome of the pending case to ascertain if there was additional coverage. If so, an additional amount would be paid.

Because of the unusual nature of the proposed settlement, the litigation specialist was to review the file and submit it and a recommendation to Ms. Hale who would then consult with AIG's Service Center Manager. Consistent with these requirements, Mr. Riley evaluated the pending case, placed its file and his evaluation report in Ms. Hale's "bas-

---

1. Plaintiff filed a Motion to Assess Damages for Frivolous Appeal and for Dismissal of Appeal that was taken with the case. That motion is denied.

ket." However, Ms. Hale was away from her office from March 14, 1995, until April 4, 1995, due to a work-related injury she had sustained. In her absence, AIG's company policy provided for her basket to be checked periodically so the files awaiting her return did not go unattended.

The record is unclear as to when the work awaiting Ms. Hale's return was reviewed. The file applicable to this case was discovered in the Service Center Manager's basket on either April 4 or 5, 1995. The Service Center Manager, Jose Rivas, was on vacation from March 31, 1995, until April 12, 1995. An employee checking Mr. Rivas' basket during his absence was the one who discovered the file there.

Default judgment was taken April 4, 1995. Testimony was heard. The trial court awarded plaintiff damages in the amount of $349,845.99.

On May 4, 1995, defendant filed motions to set aside the default judgment and for leave to file answer out of time. An amended motion to set aside the default judgment was filed May 30, 1995. Affidavits of defendant and employees of AIG—Jennifer Hale, Jose Rivas and John Riley—were filed in support of the motion to set aside the default judgment. The motion was denied.

Defendant contends the traffic light was green before he entered the intersection; that the light was obscured by sunlight once he entered the intersection; that there was no cross traffic when he entered. He claims plaintiff violated the traffic signal and failed to avoid the collision. He argues it is likely that these circumstances would materially affect the case's outcome.

Defendant asserts one allegation of trial court error. He contends the trial court erred in denying his amended motion to set aside the default judgment because good cause was shown as to why he did not timely plead and he demonstrated a meritorious defense. He asserts that his motion to set aside the default judgment was timely; that there was no reckless behavior or other intent to impede the judicial process.

■ The applicable scope of appellate review is stated in *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835 (Mo.App.1996).

> The trial court has the discretion to set aside a default judgment, and its decision will not be interfered with unless an abuse of discretion is found. *Bell v. Bell,* 849 S.W.2d 194, 197 (Mo.App.W.D.1993); *Moore v. Dahlberg,* 810 S.W.2d 730, 732 (Mo.App.W.D.1991). The discretion not to set aside a default judgment, however, is a good deal narrower than the discretion to set one aside. *LaRose v. Letterman,* 890 S.W.2d [347] at 350 [Mo.App.1994]. Thus, appellate courts are more likely to reverse a judgment which fails to set aside a default judgment than one which grants that relief. *Moore v. Dahlberg,* 810 S.W.2d at 732. This is because of the law's distaste for default judgments and its preference for trials on the merits. *See LaRose v. Letterman,* 890 S.W.2d at 350; *Gibson v. Elley,* 778 S.W.2d [851] at 854 [Mo.App. 1989].

*Id.* at 838.

Rule 74.05(d) permits a default judgment to be set aside "[u]pon motion stating facts constituting a meritorious defense and for good cause shown." "Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." *Id.* The motion must "be made within a reasonable time not to exceed one year after the entry of the default judgment." *Id.*

### Meritorious Defense

Defendant gave two affidavits that were filed with his motion to set aside the default judgment and the amended motion. The first affidavit, given May 3, 1995, addressed his being served with process, his referral of the case to his insurance carrier and the circumstances of the accident. The second, given May 26, 1995, made additional references to the circumstances of the accident.

Defendant's first affidavit stated with reference to the accident, "I was involved in an automobile accident on April 19, 1994. It was late in the afternoon, and I was headed west on Grand." It added, "The sun was

directly in my eyes, and I was unable to see the traffic light."

In defendant's second affidavit, he stated he had previously filed an affidavit with the trial court. The affidavit continued:

. . . . .

3. On the date of the accident on April 19, 1994, I was asked by Police Officer Becky Hollis about the color of the light that I went through.

4. At that time, and still to this day, I think my light was green.

5. The light was green when I was about to enter the intersection of Grand and Kimbrough. As I drove into the intersection, I was blinded by the sun and could not see the light, but I could tell that no cars were going through the intersection on the cross street.

6. I have attached a copy of the Springfield Police Department's report, and the statement that I am quoted as making on page 6 of that report is an accurate reflection of what I told Police Officer Becky Hollis on April 19, 1994.

. . . . .

Defendant was identified in the police report as "Driver # 5." Page 6 of the report includes the statement, "Driver # 5 stated that he thought his light was green."

■ "The 'meritorious defense' provision of Rule 74.05(c) [2] requires only 'that some showing be made of the existence of at least an arguable theory from which a defense may be made.' " *Clark v. Brown*, 814 S.W.2d 634, 642–43 (Mo.App.1991), *quoting Gibson by Woodall v. Elley*, 778 S.W.2d 851, 855 (Mo.App.1989). A defendant is not required to present extensive evidence or a full blown defense to show a meritorious defense. *Moore v. Dahlberg*, 810 S.W.2d 730, 732 (Mo. App.1991). This includes a defense of comparative fault. *Schulte v. Venture Stores, Inc.*, 832 S.W.2d 13, 15 (Mo.App.1992).[3]

■ Plaintiff's case is an action for negligence. To prevail he must establish that: (1) defendant had a legal duty to conform to a certain standard of conduct to protect others against unreasonable risks; (2) defendant breached that duty; (3) there was a proximate cause between defendant's conduct and the harm that resulted; and (4) damage resulted. *Gibson by Woodall v. Elley*, 778 S.W.2d at 855.

■ Defendant's assertion that the traffic light was green when he entered the intersection where the accident occurred, if believed by a jury, would be material to refute the claim that he breached a duty to yield the right of way at the intersection where the accident occurred. Those circumstances would also be material to a defense of comparative fault which defendant says he intends to raise if the default judgment is set aside and he is permitted to file an answer. Defendant demonstrated a meritorious defense that was sufficient to meet the requirements of Rule 74.05(d).

### Good Cause

■ *Myers v. Pitney Bowes, Inc.*, *supra*, addresses the "good cause" requirement of Rule 74.05(d) and its applicability to a failure to timely file an answer.

The good cause requirement of Rule 74.05(d) is satisfied by proving that the party in default did not recklessly or intentionally impede the judicial process. *Great S. Sav. & Loan Ass'n v. Wilburn*, 887 S.W.2d 581, 584 (Mo. banc 1994); *LaRose v. Letterman*, 890 S.W.2d at 351; *Plybon v. Benton*, 806 S.W.2d 520, 524 (Mo.App. W.D.1991). While the prior version of Rule 74.05 was interpreted to mean that a defendant who negligently failed to file a timely answer should be denied relief, the amended rule clarifies that " 'good faith mistakes do constitute good cause, and a default judgment can now be vacated *even if the movant has negligently failed to file a timely answer.*' " *Newton v. Manley,*

---

2. What is now paragraph (d) of Rule 74.05 was previously paragraph (c). The text remains the same. The paragraph was redesignated (d) by a June 1, 1993, amendment of the rule that became effective January 1, 1994.

3. *Schulte* was overruled in *Cotleur v. Danziger*, 870 S.W.2d 234 (Mo. banc 1994), as to an issue not applicable to this appeal.

824 S.W.2d 522, 524 (Mo.App.S.D.1992) (quoting Laughrey, Judgments—The New Missouri Rule, J.Mo.Bar 11, 15 (Jan.–Feb. 1988)). [Emphasis in original.] 914 S.W.2d at 839.

In *Myers* the court found that the mishandling of legal papers as a result of unusual office circumstances was good cause for setting aside a default judgment. After Pitney Bowes, Inc., was served with process, it transferred the case to its Connecticut headquarters.

The corporate department in which the lawsuit would normally have been processed was undergoing reorganization. The usual person to respond to the allegations in the lawsuit was the manager of that department. He had recently retired causing a realignment of responsibilities. As a result, the lawsuit failed to come to the attention of someone able to respond to it within the time when a responsive pleading was required to be filed. Once a responsible corporate official learned of the lawsuit, prompt action was taken. This court held that the circumstances in *Myers* amounted to "good cause" for setting aside the default judgment.

Similar facts in *Gibson by Woodall v. Elley, supra,* and *McClelland v. Progressive Casualty Ins. Co.,* 790 S.W.2d 490 (Mo.App. 1990), were found to be good cause for setting aside default judgments.

One of the defendants in *Gibson* was Union Pacific Railroad Company. Union Pacific had an agreement with Amtrak whereby Amtrak was responsible for defending Union Pacific in any litigation. After Union Pacific was served with process, Amtrak was contacted and the legal documents forwarded to its Director–Litigation. The week the papers were sent, the entire Amtrak Law/Claims Department was attending a meeting in Pennsylvania. Its office was staffed only with temporary secretaries. The legal documents were not processed but were found several weeks after Amtrak had received them in a pile of miscellaneous papers. Default judgment had been entered.

The default judgment was set aside. The Western District of this court held that this amounted to good cause for purposes of Rule 74.05(d); that it was "inconsistent with the intentional behavior required by the Rule." 778 S.W.2d at 854.

In *McClelland* service was made on the Missouri Division of Insurance. The papers were forwarded to the insurer and transmitted to an employee who was on vacation. The substitute employee who saw the papers when they arrived "by oversight or mistake" did not note the hearing date on the summons. By the time the vacationing employee returned and saw the papers, the date had passed and default judgment had been entered. The insurer moved to set it aside and provided an affidavit explaining what occurred. The trial court found good cause to set aside the default judgment. This court affirmed.

■ Here, as in *Myers, Gibson* and *McClelland,* there was no evidence that defendant engaged in conduct designed to impede the judicial process. The failure to timely plead was the result of defendant's insurer's mishandling the legal documents that were served on defendant. The papers were promptly transmitted to the insurer, but because of its personnel problems, delays resulted so that no attorney was retained nor pleadings filed. Defendant demonstrated good cause for having failed to timely plead.

### Timeliness of Defendant's Motion

■ Default judgment was entered April 4, 1995. Defendant's insurer attempted to contact plaintiff's attorney April 6, 1995. The attorney was out to lunch. A message was taken by another lawyer in the office. The next day, April 7, plaintiff's attorney attempted to return the call but was unable to reach the person who placed the call. A message was left on voice mail. On April 13 the attorney, having received no response to the April 7 voice mail message, again tried to reach the representative of defendant's insurer who had called a week earlier. He did not reach the individual and again left a voice mail message. Approximately one hour later the insurer's representative called and was told that a default judgment was taken because no answer had been filed.

Defendant filed his motion to set the judgment aside May 4. Plaintiff filed written suggestions in opposition to the motion May 11. An amended motion was filed May 30. Suggestions in opposition to the amended motion were filed June 2. The trial court ruled on the motion October 16, 1995.

The motion to set aside the default judgment was filed on the thirtieth day following the trial court entering judgment. In *Bell v. Bell*, 849 S.W.2d 194, 198 (Mo.App.1993), a motion to set aside a default judgment filed 15 days after the motion was entered was held to have been filed within a reasonable time. In *Clark v. Brown*, 814 S.W.2d 634, 638 (Mo.App.1991), a 29–day delay between the entry of a default judgment and the filing of a motion to set it aside was determined to have been reasonable.

Here, there is nothing that indicates the 30–day delay between entry of the default judgment and filing the motion to set it aside resulted in substantial harm to plaintiff. There is no indication that anything occurred during that period that would adversely affect plaintiff's ability to pursue his cause of action on its merits. Under these circumstances this court holds that defendant's motion was made within a reasonable time, commensurate with Rule 74.05(d), after the judgment was entered.

For the foregoing reasons, the trial court abused its discretion in denying defendant's motion to set aside the default judgment in this case. The preference in the law for adjudicated claims on the merits requires, in the circumstances of this case, that the order denying the motion to set aside the default judgment be reversed. The case is remanded. The trial court is directed to set aside the default judgment heretofore entered and to fix a reasonable time in which defendant shall be permitted to file an answer.

MONTGOMERY, C.J., and SHRUM, J., concur.