**In re James CROWE, Plaintiff–Respondent,**

v.

**Charlie CLAIRDAY, Defendant–Appellant,**

and

**Amvet Post # 135, Defendant.**

No. 20468.

Missouri Court of Appeals, Southern District, Division One.

Oct. 29, 1996.

David G. Neal, Neal Law Office, Eminence, for defendant-appellant.

Fred O'Neill, Perkins Law Office, L.L.C., Thayer, for plaintiff-respondent.

BARNEY, Presiding Judge.

Appellant Charlie Clairday (Defendant) appeals a default judgment entered against him and in favor of Respondent James Crow (Plaintiff) by the Circuit Court of Oregon County, Missouri. In his sole point on appeal Defendant argues that the trial court erred in refusing to sustain his motion to set aside the default judgment under the provisions of Rule 74.05(d).[1]

Plaintiff commenced his action on June 15, 1993, by filing a petition against Defendant for injuries he sustained on April 24, 1993, in a tavern where Defendant was "helping out". Defendant owned the building where the tavern was located. Plaintiff alleged that unnamed persons, whose violent propensities were known to Defendant, assaulted and beat him, causing him permanent injury. Plaintiff further alleged that Defendant was negligent in failing to protect him from the assault and in not aiding him after the assault commenced. He alleged loss of income, past and future medical expenses and entitlement to punitive damages. Plaintiff subsequently filed a first amended petition against Defendant adding an additional party and generally replicated his original petition.

On March 7, 1994, Plaintiff appeared in the trial court but Defendant was held to be in default for failure to appear. The Plaintiff offered his evidence and the case was taken under advisement by the trial court. The docket sheet reflects that Defendant was notified of the proceedings that had taken place that date.

On April 4, 1994, the trial court dismissed Plaintiff's petition and upon appeal to this Court in *Crowe v. Clairday,* 893 S.W.2d 400 (Mo.App.1995), the trial court's order dismissing the petition was reversed and the case was remanded for trial.[2]

It is noteworthy that although Defendant did not make a formal appearance in the first appeal, he did file a pro se motion to dismiss the Plaintiff's appeal. By certificate of service dated August 31, 1994, he then notified Plaintiff's attorney of the motion. In the motion to dismiss, Defendant attempted to assert the affirmative defense of res judicata.

After remand of the case, the docket sheet shows that on February 23, 1995, the trial court set the matter for announcement and first proceedings on March 6, 1995. The docket sheet further reflects the fact that copies were sent to Plaintiff's attorney as well as to Defendant.

On March 6, 1995, Plaintiff and his counsel were present and Defendant appeared pro se. The docket entry recited that "all parties state their respective positions; matter set for hearing on issue of damages for 10:00 a.m. April 3, 1995—parties advised specifically that rules of procedure of Sup.Ct. [Mis-

---

1. All Rule references are to Missouri Rules of Civil Procedure (1995) unless otherwise noted.

2. This Court expressly held that upon remand "an additional hearing on the issue of damages may be required. In conducting any such hearing, the provisions of Rule 74.05(a) and (b) shall apply." *Crowe,* 893 S.W.2d at 403.

souri Supreme Court] will be strictly followed." The docket sheet also recited that on "3/6/95 [c]opy of [d]ocket sheet mailed to Fred O'Neill [Plaintiff's attorney] and Charlie Clairday [Defendant]."

On April 3, 1995, the parties appeared again. The Defendant had no counsel but requested a continuance which was overruled by the trial court. A hearing was held and the trial court took the matter under advisement and subsequently entered judgment solely against Defendant in the amount of $12,042.70 on April 14, 1995. The docket sheet recited that on "5/17/95 [c]opies mailed to Mr. Clairday [Defendant] and Mr. O'Neill [Plaintiff's attorney] this date."

On September 5, 1995, after a writ of execution was issued and Defendant's land was levied upon and about to be sold at sheriff's sale, Defendant obtained counsel and filed his motion to quash execution, stay execution and set aside default judgment. At a subsequent hearing on all motions, the trial court found that Defendant stated a meritorious defense but found that Defendant failed to provide any evidence of good cause for his default because he had not shown sufficient excuse for not hiring an attorney earlier nor had he filed a timely answer to the petition.

As a preliminary matter, we note that Defendant was physically present at the April 3, 1995, hearing which considered Plaintiff's allegations of damages. Since both parties have treated this matter exclusively as a default judgment under the provisions of § 74.05(d), we do likewise, without determining what effect, if any, Defendant's presence may have had on his legal right to seek relief under the rule.

### Scope of Review and Applicable Law

The applicable scope of appellate review is stated in *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835 (Mo.App.1996).

The trial court has the discretion to set aside a default judgment, and its decision will not be interfered with unless an abuse of discretion is found. The discretion not to set aside a default judgment, however, is a good deal narrower than the discretion to set one aside. Thus, appellate courts

are more likely to reverse a judgment which fails to set aside a default judgment than one which grants that relief. This is because of the law's distaste for default judgments and its preference for trials on the merits.

*Id.* at 838 (citations omitted).

■ Rule 74.05(d) permits a default judgment to be set aside "[u]pon motion stating facts constituting a meritorious defense and for good cause shown.... Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." The motion must "be made within a reasonable time not to exceed one year after the entry of the default judgment." Rule 74.05(d); *Myers*, 914 S.W.2d at 838; *see also Keltner v. Lawson*, 931 S.W.2d 477, 479 (Mo.App.S.D.1996).

■ The trial court has found and Plaintiff herein does not dispute the fact that Defendant otherwise has a meritorious defense to Plaintiff's action. "The defense does not have to be conclusively proven, but must simply show the existence of an arguable theory of defense." *Magee v. Magee*, 904 S.W.2d 514, 519 (Mo.App.1995). Therefore, the focus of this appeal is upon whether or not Defendant had "good cause" for failing to meet his responsibilities to take the legal steps necessary to protect his interest in the lawsuit. If good cause is not also established, the trial court does not abuse its discretion by failing to set aside the judgment. *Robson v. Willers*, 784 S.W.2d 893, 896 (Mo.App.1990).

*Myers, supra,* addresses the "good cause" requirement of Rule 74.05(d) and its applicability to a failure to timely file an answer:

The good cause requirement of Rule 74.05(d) is satisfied by proving that the party in default did not recklessly or intentionally impede the judicial process. While the prior version of Rule 74.05 was interpreted to mean that a defendant who negligently failed to file a timely answer should be denied relief, the amended rule clarifies that 'good faith mistakes do constitute good cause, and a default judgment can

now be vacated *even if the movant* has *negligently failed to file a timely answer.'* *Myers,* 914 S.W.2d at 839 (citations omitted).

■ "Once properly served, a party who defaults is charged with notice of all subsequent proceedings in the case." *Bredeman v. Eno,* 863 S.W.2d 24, 26 (Mo.App.1993). "Therefore, a party in default has no right to notice of the default proceedings." *Id. See* Rule 43.01.

### Discussion

■ On September 12, 1995, a hearing was held on all pending motions. Defendant acknowledged that a sheriff's deputy had served him with papers in December 1993 and he "found out" what they were about.

He then testified that he had turned the papers over to his insurance company and did not show up for the March 7, 1994, hearing where he was found to be in default. He testified that he assumed that his insurance attorney had taken care of the matter. He argues that he was not fully aware that he was unrepresented until March 6, 1995.

However, Defendant presented no proof, other than his own testimony, that he had notified his insurance company of the pending lawsuit.

Further, the fact that he filed a pro se motion to dismiss Plaintiff's appeal sometime in August of 1994 belies his testimony that he was not aware until March 6, 1995, that he was not being represented by his insurance company.

The following colloquy took place relative to his participation in the first appeal of the case herein:

Q. [by Plaintiff's counsel] You filed a pleading with the Court of Appeals, do you remember doing that, on this matter that was on appeal? It was called a Motion to Dismiss. Did you prepare that pleading?
A. No, I didn't. Well, I—I had it typed up. A friend of mine that's a lawyer in—in Springdale—
Q. So you knew that some pleadings needed to be filed, is that correct?
A. Well,—
Q. Mr. Clariday [sic]—
A. —I didn't know that I even had to do that.

"The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record." *In re Marriage of Gardner,* 890 S.W.2d 303, 304–05 (Mo.App.1994). It is apparent that the trial court found no merit in Defendant's testimony regarding his representation by an insurance company attorney.

The Defendant also testified that he had been sued on two prior occasions. He also acknowledged that every time he appeared the trial court advised him to obtain an attorney and that certain rules needed to be followed. Defendant stated, however, that despite his best efforts he was unable to obtain an attorney to represent him and although he had the money to pay a lawyer, when he called them on the telephone, none would return his call. However, Defendant's protestations that he was unable to hire counsel at any time and, in particular, for the April 3, 1995, hearing do not ring true.

First, Defendant testified that he had previously been involved in two lawsuits and during this process he should have gained some experience in his dealings with his attorney and the court system.

Second, he was astute enough to have contacted an attorney friend of his during the pendency of the first appeal involving the instant case. He then filed his pro se motion to dismiss Plaintiff's appeal, some seven months prior to the final trial date of April 3, 1995. This evidence, then, shows that Defendant was aware that he was not represented by insurance company counsel and was placed on notice about the need to retain counsel.

Third, he testified that he had sufficient funds to hire an attorney but they didn't return his call. We can conclude that Defendant never went to the office of an attorney for purposes of hiring the attorney to represent him. He in fact did hire an attorney, but only on the eve of his property being sold at sheriff's sale.

In *Great Southern Sav. & Loan Ass'n v. Wilburn*, 887 S.W.2d 581 (Mo. banc 1994), the appellant, Dan Wilburn, had been served with a petition on April 25, 1990. He then delivered the summons and petition to his first attorney who later informed the appellant that he could not represent him. Appellant then attempted to retain the services of a second attorney who, in turn, informed appellant that his representation was conditioned upon appellant delivering to the second attorney the case file from the first attorney. It was not until May 29, 1990, that he retrieved the file from his first attorney and delivered the file to his second attorney. Meanwhile, a default judgment had been entered against the appellant. The Missouri Supreme Court held that "the trial court could have reasonably concluded that Dan recklessly or intentionally impeded the judicial process" and consequently "the trial court committed no error in overruling Dan's motion to set aside." *Id.* at 584.

In *In re Marriage of Pierce*, 867 S.W.2d 237 (Mo.App.1993), the appellant complained that he was misled by the respondent into believing that she would not seek a default judgment without an agreement of the parties. Respondent obtained a default judgment. Appellant then sought relief under the provisions of Rule 74.05(c).[3] There was evidence that after receiving the petition and summons and being advised to get an attorney appellant did not do so. He talked to an attorney but did not hire one. This Court concluded that "[t]he trial judge apparently did not believe that appellant was misled by respondent as asserted by appellant and that 'good cause' was not shown" to set aside the default judgment. *Id.* at 238. *See also In re Marriage of Williams*, 847 S.W.2d 896, 899 (Mo.App.1993). Defendant, too, had been previously advised by the trial court to obtain counsel. The evidence shows he ignored or recklessly disregarded these entreaties.

At the conclusion of the first appeal herein Defendant had the opportunity to have taken appropriate action to commence the process to set aside the original default judgment and otherwise actively defend his case. He chose not to do so. While Defendant is not required to be represented by an attorney, he is not entitled to any more indulgence than he would have received had he been represented by an attorney. *Lamastus v. Lamastus*, 886 S.W.2d 721, 726 (Mo.App.1994). "While this court recognizes the problems faced by pro se litigants, we cannot relax our standards for nonlawyers. It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties." *Sutton v. Goldenberg*, 862 S.W.2d 515, 517 (Mo.App.1993) (citation omitted). If, as in the case of Defendant herein, a litigant chooses to ignore or act in reckless disregard of the rules and procedures set out for the orderly administration of the judicial process, he cannot then be heard to complain when he receives no relief under its rules, particularly Rule 74.05(d).

Defendant has not established good cause to set aside the judgment in this case. There has been no showing of an abuse of trial court discretion in failing to do so. The judgment is affirmed.

GARRISON and PREWITT, JJ., concur.

---

**3.** What is now paragraph (d) of Rule 74.05 was previously paragraph (c). The text remains the same. The paragraph was redesignated (d) by a June 1, 1993, amendment of the rule that became effective January 1, 1994.