Karen McCLELLAND, Respondent,

v.

PROGRESSIVE CASUALTY
INSURANCE COMPANY,
Appellant.

No. 16508.

Missouri Court of Appeals,
Southern District,
Division Two.

May 29, 1990.

David C. Ruyle, Ruyle & Sims, Neosho, for appellant.

Robert W. Evenson, Evenson, Carlin & LePage, Pineville, for respondent.

HOGAN, Judge.

Progressive Casualty Insurance Company, a foreign insurer, appeals from an order denying its motion to set aside a default judgment pursuant to Rule 74.05(c).[1] We affirm.

By policy issued on or about November 4, 1988, Progressive insured a 1981 Ford Bronco against loss or damage by fire. Plaintiff Karen McClelland was the named insured. On April 13, 1989, while

---

1. References to statutes and rules are to RSMo 1986 and V.A.M.R.

the policy was in effect, the vehicle was consumed by fire. On June 7, 1989, Karen McClelland brought an action on the policy in the Associate Division of the Circuit Court of Newton County. A summons with a copy of the petition attached was issued June 7, 1989, commanding Progressive to appear at 1:00 P.M. on July 7, 1989, all in accordance with § 517.041.1. Service was had on the Acting Director of the Department of Insurance on June 16, 1989, in the manner prescribed by Rule 54.15 and 4 CSR 190–10.070. The service of process is not questioned in this court. On July 7, 1989, the court entered a default judgment in favor of the insured and against the insurer in the amount of $6,500 together with interest in the amount of $88. On July 17, 1989, Progressive filed a Motion to Set Aside Default Judgment under Rule 74.05(c), which reads:

"(c) When Set Aside. *Upon motion stating facts constituting a meritorious defense and for good cause shown,* an interlocutory order of default or a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after entry of the default judgment. *Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.* An order setting aside an interlocutory order of default or a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a result of the default by the party who requested the default." (Emphasis added.)

The motion itself states in conclusional terms that Progressive failed to appear because of mistake or conduct that was not intentionally or recklessly designed to impede the judicial process. An affidavit in support of this allegation was attached to the motion as an exhibit. It was further pleaded, again in conclusional terms, that Progressive had a meritorious defense to plaintiff's petition. In support of this allegation, an Offense Report from the Newton County Sheriff's Office was incorporated as an exhibit as permitted by Rule 55.12.

In *State ex rel. King v. Huesemann,* 776 S.W.2d 488, 491 (Mo.App.1989), this court held that a proceeding under Rule 74.05(c) is a "civil action" within the meaning of Rule 51.05(a). The court held that a movant seeking to set aside a default judgment must (1) file a motion satisfying the pleading requirements of Rule 74.05(c), and (2) establish good cause for setting the judgment aside, at an evidentiary hearing. The court further held that: (3) the person who obtained the default judgment is entitled to reasonable notice and an opportunity to be heard on the issues raised by the motion. The procedure outlined in *Huesemann,* 776 S.W.2d at 491, was followed in this case. Though the motion on its face is conclusional, an affidavit and another document were attached thereto and became a part of the pleading for all purposes. Rule 55.12; *City of Joplin v. Village of Shoal Creek Drive,* 434 S.W.2d 25, 31 (Mo.App.1968). A hearing was held so the movant could establish good cause to set the judgment aside, and there is no question that the plaintiff had notice and an opportunity to be heard.

The hearing was informal, more nearly an exchange of remarks than a formal hearing. Progressive presented the affidavit attached to its motion as evidence of good cause to set the judgment aside. Inasmuch as the affidavit was uncontroverted, it was properly received as evidence of the facts stated therein. Rule 55.28; *Ray v. Lake Chevrolet–Oldsmobile, Inc.,* 714 S.W.2d 928, 931 (Mo.App.1986). The affidavit was executed in Ohio by Andrew H. Isakoff, an attorney employed by Progressive. Mr. Isakoff stated that after the petition and summons were served on the Missouri Division of Insurance, the Division sent those papers to Jodi Lash, at Progressive's Central Division. Lash accepted service and referred the petition and summons to Jeff Haniewich, also employed by Progressive's Central Division. Haniewich was on vacation when the petition and summons were sent to him. The summons was reviewed by a staff member who noted that the date of service on the Division of Insurance was June 16, 1989. By over-

sight and mistake it was not noted that the case had been set for hearing on July 7, 1989. Further, it was inadvertently and mistakenly thought that Progressive had 30 days from the date of service on the Division of Insurance in which to file an answer.

Continuing, the affiant stated that the petition and summons were placed on Mr. Haniewich's desk and were not reviewed by him until he returned from his vacation. The petition and summons were then brought to the attention of the legal department of the Central Division and it was realized that the case had been set for hearing on July 7, 1989. By this time, the hearing had already been had.

■ Such is the substance of the proof of good cause. The court was, of course, free to believe or disbelieve the statements made in the affidavits, *Ray v. Lake Chevrolet–Oldsmobile, Inc.*, 714 S.W.2d at 931; *Flegel v. Holmes*, 614 S.W.2d 779, 780[3] (Mo.App.1981), but the trial court appears to have accepted the affiant's statements as true with some reservation whether the affidavit established "good cause" within the meaning of Rule 74.05(c).

■ Rule 74.05 is relatively new, and in the course of a reasonable research, we have been unable to discover the source of the phrase "mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." Whatever the concept embraced in that phrase, it is clear that the trial court's discretion to forgive the mishandling of legal documents has been considerably broadened. See *Gibson By Woodall v. Elley*, 778 S.W.2d 851 (Mo. App.1989). There is some degree of analogy between Rule 74.05(c) and the first clause of Fed.R.Civ.P. 55(c), which authorizes relief from a default entry. Relief from a default entry has been granted by the federal courts when the default was due to a mistake by counsel as to the applicable procedural rules. 10 C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 2696, p. 515 (1983). In this case, one could easily believe that counsel might not understand that the form of summons authorized in cases commenced in the Associate Division of the Circuit Court differs from the summons issued in civil actions filed in the Circuit Court, which allows 30 days to respond. Our courts have not been inclined to grant relief from default judgments which result from the mishandling of documents, *Sprung v. Negwer Materials, Inc.*, 775 S.W.2d 97, 100 (Mo. banc 1989), but as we have said, the language of Rule 74.05(c) is obviously intended to broaden the definition of "good cause" considerably and we cannot say the trial court erred in holding that good cause for setting aside the default judgment was shown.

■ In order to set aside a default judgment, of course, a movant must not only show good cause for being in default but must also plead facts constituting a meritorious defense. There is no requirement that the movant present his defense in detail, but he must demonstrate an arguable theory that would defeat the plaintiff's claim. See *Robson v. Willers*, 784 S.W.2d 893, 895 (Mo.App.1990).

■ Progressive attached an exhibit—a police report dated April 13, 1989—to its motion in order to plead facts constituting a meritorious defense, specifically, arson. The police report was not verified, and even if it had been received as a business record, it contains matters of opinion which might not have been competent had the officer who prepared the report testified in person. Nevertheless conclusions, and even hearsay, may be considered if not objected to. *Conlon v. Roeder*, 418 S.W.2d 152, 158–59[5] (Mo.1967); *Williams v. Cavender*, 378 S.W.2d 537, 541 (Mo.1964); *Thorpe v. Meier*, 755 S.W.2d 683, 691[4] (Mo.App.1988). The probative value of such evidence is for the trier of fact. *Thorpe v. Meier*, 755 S.W.2d at 691; *Bourne v. Manley*, 435 S.W.2d 420, 427–28[8] (Mo.App.1968).

Taken at face value, the police report indicates that the officer who investigated the fire which destroyed the insured vehicle did so at the request of one Robert McClelland, to whom the vehicle was registered. The investigating officer found the automo-

bile in a rural area, completely destroyed by fire. The driver, Les Cummings, had borrowed the vehicle from Robert McClelland. It does not appear whether Robert McClelland was the insured's husband, father, or brother, or even that he was related to the insured. Cummings, the driver of the vehicle, had acquired a passenger, Robert Stanek, and was driving to a destination about one and one-half miles east of the place where the vehicle burned. Cummings stated the vehicle stopped and shortly thereafter he noticed smoke coming from the dashboard. Cummings and Stanek walked east to a farm house to obtain a bucket of water to extinguish the fire. When they returned, the vehicle was engulfed in flames. The investigating officer was unable to determine that Cummings or Stanek had made any contact with anyone in the neighborhood. Neither man reported that the automobile exploded, although it apparently did so.

Robert McClelland appeared. He advised the investigating officer that he had loaned the car to Cummings the night before the fire. McClelland "did not appear upset over the loss of his vehicle." He also indicated that he had smelled gas while he was driving the vehicle before it burned. The investigating officer noted several circumstances which suggested to him that the fire might have been an incendiary fire.

Having presented the police report, Progressive took the position that it had established the defense of arson or intentional burning. The court declined to accept the report as a showing that Progressive had a meritorious defense, expressing the view that it was incumbent upon Progressive to show that the plaintiff, not some other person, set fire to the car. Initially, Progressive offered to have two witnesses testify to the facts shown by the police report, but qualified its offer by saying it believed some of the investigators' knowledge of the facts was privileged as work product. As we read the record, Progressive regarded the police report as being sufficient to establish its meritorious defense.

 In the circumstances presented, we are remitted to considering whether the police report, of itself, established the existence of a meritorious defense. We are aware that there is no universally accepted standard among courts as to what satisfies the requirement that a party seeking to set aside a default judgment show a meritorious defense. Cf. *Trueblood v. Grayson Shops of Tennessee, Inc.*, 32 F.R.D. 190, 195–96 (E.D.Va.1963). We do believe in this case, in which the meritorious defense is factual, as opposed to a defense which is a matter of law, e.g., that the judgment is void, the court should insist on a specific recitation of particular facts which, if proven, would constitute a meritorious defense. As it is, we agree with the trial court's conclusion that the police report, taken as true, is insufficient to demonstrate the defense of arson. Very generally, it may be said that the voluntary and intentional burning of insured property by the insured or by another with the insured's authority, procurement or connivance does not create a right of recovery upon the policy. 43 Am.Jur.2d Insurance § 493, p. 562 (1982). Nevertheless the encyclopedias state, and the cases generally support the statement, that intentional burning of property by an insured's relative or agent does not defeat recovery when the insured was not implicated in the act. See *Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., Inc.*, 149 F.2d 359, 361 (5th Cir.1945) [incendiary destruction of corporation's mill would not be charged to the corporation if the act was committed by an officer not authorized thereto or by one of several stockholders without the connivance of the others]; *Millers Nat. Ins. Co. v. Bunds*, 158 Kan. 662, 149 P.2d 350 (1944) [owners of grain stored in a public warehouse which had been destroyed by fire could recover on warehousemen's fire policy even though the warehouseman had intentionally burned the warehouse]; *Shelby Mut. Ins. Co. v. Dual State Const.*, 75 N.C.App. 330, 330 S.E.2d 508 (1985) *cert. denied* 314 N.C. 669, 335 S.E.2d 496 (1985) [to establish arson as a defense to an action on an insurance policy, the insurer must prove that the property was intentionally burned and that the insured participated directly or indirectly in the burning].

There are allegations in Progressive's motion that the automobile exploded and its burning created intense heat. These and other allegations would, we believe, permit the inference that the fire was an incendiary fire. No facts are averred, however, from which one might infer that either Karen or Robert McClelland participated directly or indirectly in the burning. The trial court correctly concluded that no meritorious defense was pleaded or otherwise shown, and accordingly the judgment is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.

SHRUM, J., not participating because not a member of the court when case submitted.