**Glenda Kay YERKES,**
**Plaintiff/Respondent,**

v.

**Stephanie A. ASBERRY a/k/a Neukirch,**
**and St. Paul Fire and Marine Insurance Company, Defendant/Appellant,**

**and**

**Richard E. Yerkes, Defendant.**

No. 69668.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 4, 1997.

Bernard A. Reinert, Joseph M. Krutzsch, St. Louis, for defendant/appellant.

Andrew H. Koor, Suddarth & Koor, O'Fallon, for plaintiff/respondent.

AHRENS, Chief Judge.

Defendant, St. Paul Fire and Marine Insurance Company, appeals from the trial court's entry of default judgment in favor of plaintiff, Glenda Yerkes, in her action to recover the amount of a notary bond after alleged notarial misconduct. We reverse and remand.

This case arises out of events surrounding the transfer of a piece of real estate owned by Richard Yerkes and his wife, Glenda Yerkes. Glenda Yerkes brought this action against Richard Yerkes and Stephanie Asberry, a notary public, for misrepresentation and conspiracy in obtaining title to the Yerkes' marital home, and against St. Paul Fire and Marine Insurance Company and Asberry to recover on the notary bond issued on behalf of Asberry.

Glenda Yerkes claims that Richard Yerkes and Asberry conspired and made fraudulent misrepresentations to Glenda Yerkes thereby inducing her to execute documents releasing her interest in the real estate. Asberry notarized Susan Yerkes' signature on a document entitled "Assent to Execution of Deeds and Waiver of Marital Rights" and on a Quit Claim Deed which conveyed the marital home to Richard Yerkes. Glenda Yerkes claims that both of these documents were notarized without her appearance or consent. She further claims that Asberry knowingly performed notarial services when she had a disqualifying interest in the transaction.

St. Paul was served on July 5, 1995. On September 12, Glenda Yerkes requested leave to file a First Amended Petition to add Richard Yerkes as a defendant. She also filed a motion to shorten the time for a

default hearing. A default hearing was held on September 15. The trial court found that both Asberry and St. Paul had failed to file responsive pleadings and entered default judgments against Asberry on all counts and against St. Paul for the full amount of the notary bond.

On September 29, St. Paul timely filed a motion to vacate and set aside the default order and judgment pursuant to rule 74.05(d). On October 13, Asberry filed a motion to set aside the default judgment against her on all counts. Under Rule 74.05(d), the trial court may set aside a default judgment "[u]pon motion stating facts constituting a meritorious defense and for good cause shown." As evidence of a meritorious defense St. Paul stated in its motion that:

> [t]he facts in PLAINTIFF'S FIRST AMENDED PETITION establish that the allegedly wrongful notarization of the exhibits to Plaintiff's petition as amended were not and are not the proximate cause of Plaintiff's claimed damages herein (a) in that Plaintiff admits the genuineness of the signatures on the said documents and (b) in that by virtue of those documents, Plaintiff would have suffered the damages complained of even if the documents had been entirely properly notarized in every respect and in particular without any of the alleged improprieties in the notarization.

St. Paul also filed a proposed answer which denied the allegations of Glenda Yerkes' First Amended Petition and offered three affirmative defenses: (1) that Glenda Yerkes failed to state a claim upon which relief could be granted; (2) that the wrongful notarization was not the proximate cause of Glenda Yerkes' damages; and (3) that Glenda Yerkes own negligence contributed to cause her loss.

On November 17, a hearing was held on both motions. The court vacated the default judgment against Asberry, but denied the motion to vacate the default judgment against St. Paul. In its order, the court found that St. Paul timely filed its motion and made sufficient showing of "good cause," but that St. Paul failed to set forth a meritorious defense. The court entered an order pursuant to Rule 74.01 finding no just reason for delay. This appeal followed.

■ The decision to set aside a default judgment lies within the trial court's discretion, and its decision will not be overturned unless the record indicates an abuse of that discretion. *Engine Masters, Inc. v. Kirn's, Inc.,* 872 S.W.2d 644, 645 (Mo.App.1994). However, since courts favor a trial on the merits, discretion not to set aside a default judgment is narrower than discretion to set it aside. *Id.* Thus, appellate courts are more likely to interfere when the trial court has denied the motion to set aside the default judgment. *Schulte v. Venture Stores, Inc.,* 832 S.W.2d 13, 15 (Mo.App.1992).

A notary and the surety on her bond may be found liable "for all damages proximately caused by the notary's official misconduct." § 486.375, RSMo 1994. Therefore, if St. Paul sufficiently pled in its motion to set aside the default judgment that there was no proximate causation, it could constitute a meritorious defense.

■ In order to show a meritorious defense, the party in default need not present extensive evidence. *Bredeman v. Eno,* 863 S.W.2d 24, 26 (Mo.App.1993). Rather, the party need only make a showing of an arguable theory of defense. *Id.* Although there is no universal standard which establishes the components of a meritorious defense, it has been interpreted to mean "any factor likely to materially affect the substantive result of the case." *LaRose v. Letterman,* 890 S.W.2d 347, 351 (Mo.App.1994). Further, the concept of meritorious defense is not intended to impose a "high hurdle," but is designed to allow the case to be decided on the merits where there are legitimate issues to be considered. *Id.* at 351–52. However, bare statements amounting to mere speculations or conclusions fail to meet the pleading requirements. *Bredeman,* 863 S.W.2d at 25. To determine compliance with the pleading requirements, appellate courts look to the allegations in the defaulting party's motion, and such other documents as affidavits, exhibits, and proposed answers. *Id.*

**310**

St. Paul's motion set forth the fact that Glenda Yerkes admitted in her First Amended Petition that she signed the documents in question. St. Paul, therefore, alleged that it could prove that the defect in the notarization was not the proximate cause of Glenda Yerkes' damages. We find that this was not a mere speculation or conclusion. We, therefore, find that St. Paul arguably had a meritorious defense.

St. Paul further pled in its proposed answer that Glenda Yerkes' negligent actions, as described in her First Amended Petition, directly contributed to her damages. Thus, St. Paul pled the defense of comparative fault. A defense of comparative fault encompasses acts or omissions which are in any measure negligent or reckless. *Schulte*, 832 S.W.2d at 15.

Glenda Yerkes admitted that she signed the documents in question relying solely on Richard Yerkes' and Asberry's representations that she would have to execute an Assent to Execution of Deeds and Waiver of Marital Rights in order to refinance the marital home. She further alleges that she executed a Quit Claim Deed conveying all of her rights in the property to Richard Yerkes. Glenda Yerkes does not allege that she was told that she had to sign a Quit Claim Deed to refinance. Thus, the allegations in Glenda Yerkes' pleadings could arguably support St. Paul's claim that Glenda Yerkes was unreasonably negligent in relying on these representations when she signed the Quit Claim Deed. We therefore find that St. Paul made a showing of an arguable theory of defense. *See Id.*

Furthermore, the trial court granted Asberry's motion to set aside the default judgment against her on all counts, and allowed the count alleging notarial misconduct against Asberry to proceed. Thus, if a verdict was entered in favor of Asberry on the count of notarial misconduct, the surety could be held liable when the principal was exonerated. It is a general rule of suretyship law that the obligation of a surety is measured and limited by the obligation of the principal. *Krenski v. Continental Casualty Co.*, 908 S.W.2d 917, 918 (Mo.App.1995). This is an important factor which could materially af-

fect the result of the underlying case. *See LaRose*, 890 S.W.2d at 352. This fact combined with the arguable meritorious defenses offered by St. Paul lead us to conclude that the trial court abused its discretion by denying St. Paul's motion to set aside the default judgment.

The judgment of the trial court is reversed and remanded for further proceedings.

CRANDALL, J., and CHARLES B. BLACKMAR, Senior Judge, concur.