In re the MARRIAGE OF Dora
M. BALOUGH and Steven
M. Balough.

Dora M. Balough, Appellant,

v.

Steven M. Balough, Respondent.

No. 22202.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 14, 1999.

Jianbin Wei, Springfield, for appellant.

Jacob Y. Garrett, Garrett & Silvey, West Plains, for respondent.

CROW, Judge.

On June 12, 1997, the trial court filed a "Judgment, Order and Decree of Modification" which, *inter alia*, modified the "visitation" rights of Steven M. Balough with his daughter, Andrea M. Balough. This opinion henceforth refers to that judgment as "the 1997 modification."

On July 14, 1997, Dora M. Balough, ex-wife of Steven[1] and mother of Andrea, filed a motion to set aside the 1997 modification.

Following an evidentiary hearing, the trial court entered judgment denying Dora's motion. Dora appeals. As shall appear *infra*, the first of Dora's seven assignments of error is dispositive of the appeal.

The marriage of Dora and Steven was dissolved by a decree entered July 31, 1985. The decree awarded Dora "primary physical custody" of Andrea, born March 26, 1985. Steven was granted "specific visitation" and was ordered to pay child support of $125 per month.

In 1987, the trial court raised Steven's child support obligation to $150 per month and modified his "visitation privileges" by granting him physical custody of Andrea during certain specifically designated periods.

On June 5, 1996, Steven filed two pleadings in the trial court. One was designated "Petition for Review." It averred that on May 6, 1996, the Division of Child Support Enforcement ("DCSE") issued an order raising Steven's child support obligation to $248 per month; that the administrative law judge erred in certain respects in arriving at that determination; and that there was no substantial and continuing change in circumstances warranting the increase. The petition prayed for "a trial de novo," inferably per § 454.496.6–.7, RSMo 1994.

The circuit clerk mailed a copy of Steven's Petition for Review, together with a summons, to the Director of DCSE on June 7, 1996.

The second pleading filed by Steven on June 5, 1996, was designated "Motion to Modify." It averred Dora had failed to allow Steven the "visitation" with Andrea to which he was entitled; that Dora had endeavored to alienate Andrea from Steven; and that Andrea spent substantial time with her maternal grandparents. The motion prayed for "appropriate and suitable" orders regarding visitation and for an "abatement" of child support "for an appropriate period of time."

A copy of Steven's Motion to Modify, together with a summons, was served on Dora on June 13, 1996. The summons stated, in pertinent part:

"You are summoned to appear before this Court and to file your pleading to the Motion to Modify, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition."

On October 4, 1996, the trial court filed an "Order on Petition for Review" affirming the DCSE order increasing Steven's child support obligation to $248 per month.

On November 15, 1996, Steven's lawyer, Jacob Garrett, sent Dora a notice that he would call Steven's Motion to Modify up for hearing in the trial court December 4, 1996, at 9:00 a.m. Garrett did so even though Dora had filed no pleading in response to the Motion to Modify.

The trial court's docket sheet displays this entry December 4, 1996: "Pass for new notice."[2]

On December 6, 1996, Garrett sent Dora a notice that he would call Steven's Motion to Modify up for hearing in the trial court January 7, 1997, at 9:00 a.m.

Dora appeared in the trial court January 7, 1997, pursuant to the notice referred to in the preceding paragraph. The trial court's docket sheet bears no entry that date; however, the parties' briefs reveal the matter

---

1. For brevity and clarity, the three individuals mentioned in this opinion who bear the surname Balough are referred to by their respective forenames. No disrespect is intended.

2. The reason for this cryptic entry may be that lawyer Garrett sent the November 15, 1996, notice to an apartment at 2100 North Clifton in Springfield. As shall appear *infra*, Garrett subsequently sent Dora a notice for a later hearing. He directed that notice to 721 North Warren in Springfield.

**620**

was "continued by the court at the request of [DCSE]."[3]

On April 2, 1997, Garrett sent Michael Kisling, a lawyer in the Division of Legal Services of the Department of Social Services, a notice that he (Garrett) would call Steven's Motion to Modify up for hearing in the trial court April 30, 1997, at 9:00 a.m. Garrett sent no notice to Dora.

The trial court's docket sheet bears no entry April 30, 1997 (the date designated in the notice referred to in the preceding paragraph).

The following day, May 1, 1997, Steven and Garrett appeared in the trial court. Dora did not appear, nor did anyone for DCSE. Garrett told the trial court he had informed a lawyer for DCSE by phone on April 27, 1997, that he (Garrett) intended to proceed on Steven's Motion to Modify. Garrett quoted the DCSE lawyer as saying "I don't see how we're involved anymore so we ... may not show up."

Steven then testified in support of his Motion to Modify, identifying specific instances when, according to him, Dora refused to allow him the visitation with Andrea to which he was entitled.

On June 12, 1997, the trial court entered the 1997 modification referred to in the first paragraph of this opinion. In addition to modifying Steven's "visitation" rights, the 1997 modification contained directives regarding child support[4] and an award of attorney fees to Steven.

3. Where a statement of fact in one party's brief is conceded to be true in the adversary's brief, this court may consider it as though it appears in the record. *State ex rel. Missouri Highway and Transportation Commission v. Sweeney,* 933 S.W.2d 908, 910[1] (Mo.App. S.D.1996).

4. The 1997 modification provided, *inter alia:*
    "The Circuit Clerk ... as Trustee of the child support payments is directed to modify the records of her office to reflect that due to the frustration of visitation by [Dora], any and all arrearages alleged to be owed by Steven ... be reflected as paid in full as of April 30, 1997.
    [T]he Circuit Clerk ... is directed to provide [Steven] with credit for his child support in the amount of $4,500.00 and shall charge against such credit each month as set forth further in this Order.

Thirty-two days after the trial court entered the 1997 modification, Dora filed the motion to set it aside (referred to in the second paragraph of this opinion).[5] Dora's motion pled, among other averments:

"[Dora] has a meritorious defense and is able to present evidence that she has never refused to allow [Steven] visitation privileges [sic], but that said [Steven] has intentionally failed and refused to avail himself of the right to visit or make other contact with Andrea ... for a period more than two ... years."

This opinion henceforth refers to the above averment as "Dora's meritorious defense allegation."

Dora's motion also pled that DCSE failed to inform her that DCSE "had concluded its involvement in the case," and that Garrett failed to notify her of the date and time that Steven's Motion to Modify would be heard.

At the hearing on her motion, Dora told the trial court she did not realize that lawyer Kisling (who evidently represented DCSE in regard to Steven's Petition for Review) was not representing her in regard to Steven's Motion to Modify. Dora denied knowing she "was in default."

In *Great Southern Savings & Loan Association v. Wilburn,* 887 S.W.2d 581 (Mo. banc 1994), the court, citing Rule 74.05(d),[6] held a trial court may set aside a default judgment upon motion stating facts constituting a meritorious defense and for good cause shown. *Id.* at 583.

> ....
> It is the further Order of this Court that the child support obligations of [Steven] shall be suspended until such time as [Dora] begins allowing the visitation as Ordered by this Court. Upon her allowing the visitation to be conducted, the support payments shall immediately begin and the Circuit Clerk ... shall begin deleting from [Steven's] credit each month the sum of $248.00 as and for child support."

5. Dora's motion, filed pro se, listed her address as 721 North Warren in Springfield. *See:* footnote 2, *supra.*

6. Rule 74.05(d), *as it presently exists,* has remained unchanged since *Wilburn* was decided.

In the instant case, the trial court's judgment denying Dora's motion to set aside the 1997 modification began by acknowledging those requirements. Addressing Dora's meritorious defense allegation (quoted earlier in this opinion), the trial court declared:

"It is difficult for this Court to suppose that such evidence will be found credible. Steven, at the hearing on the motion to modify, detailed specific dates on which he appeared and requested visitation granted him under the existing judgment and was denied the same on pretextual grounds. He showed that Dora had failed to apprise him of her whereabouts, had obtained an unlisted telephone number which she refused to reveal, demanded that his requests for visitation be made in writing, and then refused delivery of Certified Mail stating those requests. He also introduced numerous letters as concrete evidence of his specific demands for visitation and the dates thereof. Assuming Dora would testify Steven made no effort to visit during the two years prior to the motion, such testimony would be rejected as incredible in view of Steven's extensive documentary evidence to the contrary. Steven established, beyond shadow of doubt, that he requested visitation in every way possible on numerous occasions. The motion to set aside does not recite that Dora possesses any evidence such as correspondence from Steven disavowing his visitation rights. Fully understanding the hazards of hearing only one side of a case, the Court nevertheless feels certain that the cursorily recited 'facts constituting a meritorious defense' in Dora's motion would not materially affect the outcome of the case were the matter to be retried.

. . . .

Dora's motion states no particular facts nor recites what evidence which might be adduced to prove them. It contains only a general claim that Steven *failed to exercise* his visitation. The difficulty with this 'defense' is that Steven has already established Dora's concealment of the child's whereabouts and refusal of mail (including certified mail) and telephone calls designed to arrange visits. The recital of defense in Dora's motion does not suggest that she possesses evidence of a character equivalent to Steven's known proofs." (Italics in original.)

After rendering those findings on the "meritorious defense" element of Rule 74.05(d), the trial court made no finding on the "good cause" element. Explaining why, the trial court noted that in *H.J.I. by J.M.I. v. M.E. C.,* 961 S.W.2d 108, 117[15] (Mo.App. W.D.1998), the Western District of this court declared that where a party is served with a petition by summons, notice of the time and place of the hearing for the entry of judgment is mandatory. The trial court expressed the notion that the holding in *H.J.I.* "seems contrary to Missouri Supreme Court Rules and an existing body of case law."

In that regard, this court held in *Crowe v. Clairday,* 935 S.W.2d 343, 346[4] (Mo.App. S.D.1996), that once properly served, a party who defaults is charged with notice of all subsequent proceedings in the case, consequently such party has no right to notice of the default proceedings. *Accord: Bredeman v. Eno,* 863 S.W.2d 24, 26 (Mo.App. W.D. 1993).

This court applied that doctrine in *Bailey v. Bailey,* 924 S.W.2d 512 (Mo.App. S.D. 1996), a modification proceeding brought by a mother. The father, after service of summons, filed no responsive pleading within the allotted time. Thereafter, the trial court heard the motion without notice to the father and modified the custody and child support provisions of the dissolution decree. On appeal, the father maintained the trial court erred in hearing the motion without giving him notice. This court held:

"The facts are undisputed that Father was served with a summons instructing him to answer within thirty days after service or suffer judgment by default. Father did not responsively plead and, therefore, was not notified of the hearing date. After thirty days he was in default and had no right to such notice. The trial court committed no error in proceeding to hear the matter without notice to Father."

*Id.* at 512.

This court gathers from the trial court's findings in the instant case that the trial

court suspected that because of *H.J. I.,* 961 S.W.2d at 117[15], Garrett's failure to notify Dora of the date and time of the hearing on Steven's Motion to Modify may have constituted good cause for Dora's failure to appear. The trial court stated:

"[I]n view of the uncertainty thus introduced into this subject, no finding will be made on the question of good cause for default. Because Rule 74.05(d) relief requires *both* elements, lack of a meritorious defense alone dictates that the motion [to set aside the 1997 modification] be overruled." (Italics in original.)

The significance of the trial court's decision to bypass the "good cause" issue is explained later in this opinion.

■ Dora's first point relied on:

"The trial court erred in refusing to set aside the default judgment on the ground that [Dora's] motion failed to state 'facts constituting a meritorious defense' because [Dora] stated in her motion that she 'is able to present evidence that she has never refused to allow [Steven] visitation privileges, but that [Steven] has intenionally [sic] failed to and refused to avail himself of the right to visit or make other contact with' the minor child 'for a period of more than two ... years' in that such allegation constituted meritorious derense [sic] under Rule 74.05(d)[.]"

Dora cites *Lester v. Dyer,* 518 S.W.2d 213 (Mo.App.1974), where a defendant appealed from the trial court's refusal to set aside a default judgment for the plaintiff on all three counts of the plaintiff's petition. The record revealed that pleadings prepared by the defendant's lawyer were mailed to the trial court before the pleading deadline, but received by the court after the deadline. During the interval between mailing and receipt, the plaintiff obtained a default judgment.

One of the issues on appeal in *Lester* was whether the defendant's pleadings showed he had a meritorious defense. The opinion noted that the pleadings "included a motion to dismiss with suggestions in support thereof on Count I and a general denial of Counts II and III." *Id.* at 217. The opinion continued:

"There can be no doubt the filing of a motion to dismiss with suggestions is more than an ample showing of a meritorious defense. The filing of a general denial as to the other two counts traversed all the material averments in these Counts[.] This shows defendant denies committing the acts charged against him. Such denial is a meritorious defense."

*Id.* at 217[4] (citation omitted).

Relying on *Lester,* Dora insists that her meritorious defense allegation satisfies the meritorious defense requirement of Rule 74.05(d).

Dora candidly acknowledges *McClelland v. Progressive Casualty Insurance Co.,* 790 S.W.2d 490 (Mo.App. S.D.1990), where an insurer appealed from the trial court's refusal to set aside a default judgment against it. The judgment granted an insured a monetary award for a fire loss on an automobile insured by the insurer. One of the issues on appeal was whether the insurer pled facts constituting a meritorious defense.

The insurer's pleading endeavored to assert the defense of arson. Attached to the pleading was a police report listing several circumstances indicating the fire might have been of incendiary origin. This court held the report did not demonstrate a meritorious defense in that it did not indicate the insured participated directly or indirectly in the burning. This court said:

"We do believe in this case, in which the meritorious defense is factual, as opposed to a defense which is a matter of law, e.g., that the judgment is void, the court should insist on a specific recitation of particular facts which, if proven, would constitute a meritorious defense. As it is, we agree with the trial court's conclusion that the police report, taken as true, is insufficient to demonstrate the defense of arson."

*Id.* at 494.

It is inferable from *McClelland* that if the police report had indicated the insured participated directly or indirectly in the fire, the meritorious defense requirement would have been satisfied.

In response to Dora's first point, Steven emphasizes that *Yerkes v. Asberry,* 938 S.W.2d 307 (Mo.App. E.D.1997), states:

"[B]are statements amounting to mere speculations or conclusions fail to meet the pleading requirements [to show a meritorious defense]." *Id.* at 309[4]. However, *Yerkes* also explains:

"[T]he party [seeking to demonstrate a meritorious defense] need only make a showing of an arguable theory of defense. Although there is no universal standard which establishes the components of a meritorious defense, it has been interpreted to mean 'any factor likely to materially affect the substantive result of the case.' Further, the concept of meritorious defense is not intended to impose a 'high hurdle,' but is designed to allow the case to be decided on the merits where there are legitimate issues to be considered."

*Id.* at 309[2, 3] (citation omitted).

In *Yerkes,* the plaintiff obtained a default judgment against the surety on a notary public's bond, claiming the notary falsely certified that the plaintiff signed documents in the notary's presence. The bonding company pled that the plaintiff had admitted in a pleading that she signed the documents, hence it could prove the defect in the notarization was not the proximate cause of the plaintiff's damages. The appellate court held this averment demonstrated an arguably meritorious defense. *Id.* at 310[6].

Steven also cites *Thompson v. St. John,* 915 S.W.2d 350 (Mo.App. S.D.1996); however, it, like *Yerkes,* does not aid him. In *Thompson,* the defendants moved to set aside a judgment against them, averring the plaintiff's claim was barred by a judgment in an earlier lawsuit wherein the plaintiff should have asserted his claim as a compulsory counterclaim. This court held the defendants' allegation demonstrated at least an arguable theory of defense. *Id.* at 359.

7. Steven's brief indicates he believes Rule 74.05(d) required Dora to plead specific facts, including dates, supporting her averment that he failed and refused to exercise his visitation

■ Steven appears to interpret *Thompson* as requiring a party seeking to set aside a default judgment to demonstrate an affirmative defense. Although the asserted defense in *Thompson* was an affirmative defense, nothing in *Thompson* suggests that a trial court can set aside a default judgment only upon a showing that the party who defaulted had an affirmative defense. As explained in *Thompson,* the "meritorious defense" requirement of Rule 74.05(d) requires only that the defaulting party "demonstrate at least an arguable theory that would defeat the plaintiff's claim." *Id.* at 359[13].

Steven also cites *In re Marriage of Pierce,* 867 S.W.2d 237 (Mo.App. S.D.1993), but it is likewise no help. It dealt with only the "good cause" element of Rule 74.05(d), not the "meritorious defense" element. The trial court in *Pierce* apparently disbelieved the defaulting party's explanation for failing to respond to the petition and summons. This court held that determination was a proper basis for refusing to set aside the default judgment. *Id.* at 238.

■ Having pondered the five cases discussed above in connection with Dora's first point, this court concludes that a defaulting defendant satisfies the meritorious defense requirement of Rule 74.05(d) if she or he sets forth allegations which, if supported by evidence found credible by a fact-finder, would defeat the plaintiff's claim. Applying that holding to Dora's meritorious defense allegation in the instant case, this court finds said allegation sufficient to satisfy the meritorious defense requirement of Rule 74.05(d).

Dora's meritorious defense allegation included more than a denial that she refused to allow Steven visitation with Andrea. Dora affirmatively pled Steven intentionally failed and refused to exercise his visitation rights.[7] Dora thus pled more than the defaulting defendant in *Lester,* 518 S.W.2d at 217[4]. That being so, this court, in finding Dora's first point meritorious, need not—and does

rights. This court finds no such requirement in the rule or the five cases discussed regarding Dora's first point.

not—decide whether *Lester* correctly construed Rule 74.05(d).

■ It follows that the trial court erred in holding Dora's motion to set aside the 1997 modification failed to satisfy the meritorious defense requirement of Rule 74.05(d).[8] However, that does not mean Dora is automatically entitled to have the 1997 modification set aside.

■ As explained earlier, Rule 74.05(d) requires a second element, i.e., good cause for allowing the case to go by default. *Wilburn*, 887 S.W.2d at 583. Furthermore, case law has added a third requirement: the defaulting party must show the prevailing party would not be substantially harmed by the delay resulting from the default being set aside. *Sullenger v. Cooke Sales & Service Co.*, 646 S.W.2d 85, 89[8] (Mo. banc 1983).[9]

As we have seen, the trial court in the instant case bypassed the good cause issue, perhaps because the court was uncertain whether Dora, being in default, was entitled to notice of the date and time that the court would hear Steven's Motion to Modify.

■ This court adheres to its holding in *Bailey*, 924 S.W.2d at 512, that a party served with a summons and motion to modify who files no responsive pleading within the allotted time has no right to notice of the date and time that the trial court will hear the motion. On remand, the trial court in the instant case can apply that holding.

The notice issue, however, may not be that simple. Dora's statements to the trial court at the hearing on her motion to set aside the 1997 modification indicated she believed DCSE's lawyer, Kisling, was representing her on Steven's Motion to Modify. That assertion, if found credible by the trial court, might support a finding that Dora could have reasonably relied on Kisling to (a) file a responsive pleading to the Motion to Modify within the allotted time, and (b) notify her of the trial date. Furthermore, an affidavit filed by Dora in support of her motion to set aside the 1997 modification averred that when she appeared in the trial court January 7, 1997, she was told the case "would be reset" and she "would be notified if [she] was to come back." The trial court made no finding on the credibility of that averment.

It is thus evident that there are credibility issues to be resolved by the trial court in adjudicating the "good cause" requirement of Rule 74.05(d). Accordingly, this case must be remanded to the trial court for a determination of the good cause issue. On remand, the trial court should also address the third requirement identified in *Sullenger*, 646 S.W.2d at 89[8], i.e., whether Steven will be substantially harmed by the delay that would result from the 1997 modification being set aside.

The remaining assignments of error in Dora's brief launch other attacks on the 1997 modification; however, inasmuch as the judgment denying Dora's motion to set aside the 1997 modification is being reversed, this court does not reach those issues. On remand, the trial court can determine whether any of those complaints justify setting aside the 1997 modification (or any part thereof). This court expresses no opinion on such issues.

The judgment denying Dora's motion to set aside the 1997 modification is reversed and this case is remanded to the trial court for further proceedings consistent with this

---

8. It appears from the trial court's findings (quoted earlier) that the court believed that if the 1997 modification were set aside, the evidence Dora would present in resisting Steven's Motion to Modify would be unconvincing. Dora's second point correctly notes the trial court should not have reached that issue. The meritorious defense requirement of Rule 74.05(d) requires the defaulting party to *plead* facts constituting a meritorious defense. *Wilburn*, 887 S.W.2d at 583. In endeavoring to get a default judgment set aside, the defaulting party is not required to prove the proffered defense. *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835, 839–40[9] (Mo.App. S.D.1996). Whether the evidence supporting the proffered defense is credible is to be determined *after* the default judgment is set aside, at a subsequent trial on the merits.

9. A holding in *Sullenger* unrelated to the proposition for which *Sullenger* is cited in the instant opinion was overruled in *State ex rel. DePaul Health Center v. Mummert*, 870 S.W.2d 820, 822 (Mo. banc 1994).

opinion.[10]

PREWITT, P.J., and PARRISH, J., concur.

---

**10.** This court notes a complicating factor on re-
mand. The trial court's docket sheet indicates
that the judge who entered the judgment appeal-
ed from here has now recused. Inasmuch as the
new judge did not preside at the hearing on
Dora's motion to set aside the 1997 modification,
the new judge may opt to hear Dora's motion
anew. This court expresses no opinion on how
the new judge should proceed.