David WINSOR, Appellant,

v.

TEREX–TELELECT–INC., Respondent.

No. WD 58803.

Missouri Court of Appeals,
Western District.

April 24, 2001.

James C. Morrow, Kansas City, for appellant.

George P. Coughlin, Kansas City, for respondent.

Before ELLIS, Presiding Judge, LOWENSTEIN, Judge and BRECKENRIDGE, Judge.

ELLIS, Judge.

Appellant David Winsor appeals from an order entered in the Circuit Court of Jackson County, Missouri granting Respondent Terex–Telect, Inc.'s Motion to Vacate Default Judgment pursuant to Rule 74.05(d).

On October 23, 1998, Appellant filed a petition for damages in the Circuit Court of Jackson County against Respondent and Service Plus, Inc. for physical injuries he sustained while replacing telephone wire from a boom truck along a stretch of road in Cass County, Missouri. Appellant claimed to have been working from the bucket of the boom when the boom malfunctioned causing the bucket to move in front of an oncoming vehicle. With regard to Respondent, Appellant asserted a strict product liability claim alleging that the boom mechanism was defective and unreasonably dangerous at the time of its manufacture and sale by Respondent. Appellant also alleged that Respondent was negligent in designing and inspecting

the boom and failing to provide adequate warnings on it.[1]

Respondent was served with Appellant's petition through its registered agent on November 9, 1998. On November 10, 1998, the registered agent forwarded the petition to Ms. Cecilia Neumann, who was responsible for monitoring litigation for Respondent and assigning outside counsel when necessary. Upon receipt of the petition, Ms. Neumann requested an investigation by Respondent's technical personnel to determine the history and manufacturing origin of the product referenced in Appellant's petition.

On November 16, 1998, after determining that the allegedly defective product was not manufactured or sold by Respondent, Ms. Neumann sent a letter to Appellant's counsel asking him to review the relevant enclosed documentation and to voluntarily dismiss the claims against Respondent. Ms. Neumann also wrote, "Through this letter I request that you will indefinitely extend the time for Terex to file responsive pleadings and refrain from entering default against Terex–Telelect, Inc., until you have had an opportunity to review the materials and advise me if you are willing to dismiss Terex–Telelect from the lawsuit."

Thereafter, Ms. Neumann instructed the paralegal responsible for inputting information on new cases into the Terex–Telelect database to enter Appellant's case into that database. The paralegal, who had been recently hired, inadvertently failed to enter this case into the database.

Subsequently, Ms. Neumann, who relied upon the case database to monitor the Terex–Telect cases, forgot about Appellant's case because it did not appear on the system. Six days after a response to the petition was due, on December 15, 1998, Ms. Neumann went on maternity leave until April 1, 1999. Because the case was not listed in the database, Ms. Neumann's interim replacement, Eric Cohen, was never made aware of the existence of the case.

In June 1999, several attorneys left the firm originally employed by Appellant, and Appellant's case went with them. A different attorney assumed responsibility for the case. On July 7, 1999, Appellant's new counsel filed a motion for default judgment against Respondent. That motion was not sent to Respondent. On October 5, 1999, the trial court entered an interlocutory order of default against Respondent. Thereafter, the court conducted a hearing on December 10, 1999, and on January 4, 2000, the court entered a default judgment in the amount of $200,000 against Respondent.

On January 25, 2000, outside counsel for Respondent accidentally discovered Appellant's case and the default judgment while learning to perform computer searches of Missouri court records. On February 2, 2000, Respondent filed a Rule 75.01 motion to vacate the judgment. In support of that motion, Respondent's outside counsel attached the affidavit of Mr. Cohen stating that he had never heard of the case.

The trial court conducted a hearing on the Rule 75.01 motion on February 4, 2000. At that time, Appellant produced a copy of Ms. Neumann's letter of November 16, 1998, to refute the contention that Respondent had never been made aware of the case. Based on that letter, the trial court indicated that it was going to deny the motion. Following that hearing, the parties agreed that Respondent would file a Rule 74.05(d) motion to vacate default judgment within twenty days and that Ap-

---

1. Appellant alleged that Service Plus, Inc. had been negligent in repairing, servicing, and maintaining the boom he was working in at the time of his injury.

pellant would not attempt to execute on the judgment until after the trial court ruled on that motion.

On February 17, 2000, Respondent filed its Rule 74.05 Motion to Vacate Default Judgment and Suggestions and Affidavits in Support. Respondent claimed to have "good cause" for not filing its answer because of the inadvertent omission of the case from the database and to have a "meritorious defense" based on the fact that it did not manufacture the boom. Appellant filed a response on March 1, 2000. On June 28, 2000, the trial court entered its order granting Respondent's motion and vacating the default judgment. This appeal followed.

■ In reviewing the trial court's decision on a motion to set aside a default judgment, we will affirm the court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Young v. Safe–Ride Servs.*, 23 S.W.3d 730, 732 (Mo.App. W.D.2000). "The setting aside of a judgment is traditionally within the discretion of the trial court, and that ruling will not be interfered with in the absence of an abuse of discretion." *Meramec Valley Bank v. Joel Bianco Kawasaki Plus, Inc.*, 14 S.W.3d 684, 689 (Mo.App. E.D.2000). Furthermore, because of the law's distaste for default judgments, the trial court is afforded greater discretion in granting a motion to set aside a default judgment than it is in denying such a motion. *Id.; Billingsley v. Ford Motor Co.*, 939 S.W.2d 493, 498 (Mo. App. S.D.1997).

■ In the case at bar, the trial court granted Respondent's motion under Rule 74.05(d). "Rule 74.05 allows the court to set aside a default judgment 'within a reasonable time not to exceed one year after the entry of the default judgment,' and upon a showing of a meritorious defense

and for good cause." *Young*, 23 S.W.3d at 732 (quoting Rule 74.05).

■ In his first point, Appellant claims the trial court erred in vacating the default judgment because Respondent failed to make a showing of "good cause" for not filing an answer in the case. Appellant argues that Respondent's actions constituted intentional or reckless behavior designed to impede the judicial process, and therefore, Respondent cannot be deemed to have good cause for failing to file an answer.

■ "Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." Rule 74.05(d). Under the language of Rule 74.05(d), " 'good faith mistakes [may] constitute good cause, and a default judgment can be vacated even if the movant has negligently failed to file a timely answer.' " *Billingsley*, 939 S.W.2d at 498 (quoting *Myers v. Pitney Bowes, Inc.*, 914 S.W.2d 835, 839 (Mo.App. S.D.1996)). " 'The good cause requirement of ·Rule 74.05(d) is satisfied by proving that the party in default did not recklessly or intentionally impede the judicial process.' " *Id.* " 'Good cause' is to be interpreted liberally, 'not only to prevent a manifest injustice but to avoid a threatened one especially in cases tried without a jury where evidence on one side only is presented.' " *Young*, 23 S.W.3d at 732 (quoting *Brueggemann v. Elbert*, 948 S.W.2d 212, 214 (Mo.App. E.D. 1997)).

■ Appellant claims that Respondent's actions went beyond mere negligence and should be deemed reckless or intentional. " 'A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency.' " *Bill-*

*ingsley*, 939 S.W.2d at 498 (quoting *In re Marriage of Williams*, 847 S.W.2d 896, 900 (Mo.App. S.D.1993)). "To be reckless, a person makes a conscious choice of his course of action, 'either with knowledge of the serious danger to others involved in or with knowledge of the facts which would disclose the danger to any reasonable man.'" *Id.* at 498–99. "Recklessness involves some element of deliberateness and of risk." *Brueggemann*, 948 S.W.2d at 214; *Meramec Valley Bank*, 14 S.W.3d at 689.

Appellant claims that Ms. Neumann's receipt of the petition and letter to Appellant's first attorney demonstrated her knowledge of the impending deadline for filing an answer in the case. Appellant argues that this evidence establishes that Ms. Neumann consciously chose not to file an answer in the case and to merely rely upon her letter to Appellant's attorney. Appellant further claims that this evidence reflects that Ms. Neumann chose to ignore or to act in reckless disregard of the rules and procedures established by the courts and thereby intentionally or recklessly sought to impede the judicial process. We disagree.

The affidavits presented to the trial court in support of Respondent's motion indicated that Ms. Neumann had forgotten to follow-up on the case after her paralegal inadvertently failed to enter the case into Ms. Neumann's database which Ms. Neumann used to monitor and keep track of Terex–Telelect's cases. In her affidavit, Ms. Neumann specifically stated that she "did not intentionally or knowingly ignore this case" and that she had no intention to impede the judicial process. Moreover,

Ms. Neumann was in the final month of her first pregnancy at the time she sent the letter to Appellant's counsel and, indeed, left for an extended maternity leave very shortly after a response to the petition was due.

■ From this evidence, the circuit court could reasonably have found that Respondent's failure to file a timely answer was the result of mere negligence and was not the result of a deliberate choice by Ms. Neumann to risk the possibility of a default judgment.[2] *Billingsley v. Ford Motor Co.*, 939 S.W.2d 493 (Mo. App. S.D.1997), is on point. In that case, a secretary failed to send out an assignment letter from the attorney in charge of the case to an associate who was to be assigned to file the appropriate responsive pleadings. As a result, no answer was filed and a default judgment was subsequently entered. *Billingsley* held that the evidence sufficiently established that the failure to file an answer was the result of negligence, and not recklessness, despite the fact that the attorney in charge of the case "failed to calculate the answer date, calendar or docket the response date, did nothing to insure that the acknowledgement letter was sent out in final form to [the client], and did nothing to ensure that [the associate] in fact received his direction to prepare a responsive pleading." *Id.* at 500. *Billingsley* held that the actions of the attorney and his secretary did not rise to the level of recklessness, and the trial court's denial of a motion to set aside a default judgment was reversed. *Id.*

■ The actions of Ms. Neumann and her paralegal in the case at bar were no

---

2. Moreover, "[p]rompt action by a movant assists in establishing the defendant's good faith required under Rule 74.05(d)." *Continental Basketball Ass'n v. Harrisburg Professional Sports, Inc.*, 947 S.W.2d 471, 474 (Mo. App. E.D.1997). The evidence before the circuit court reflects that Respondent filed its first motion to vacate the default judgment within days of discovering that judgment. The trial court could properly have relied on this fact in determining Respondent's good faith.

more reckless than those of the attorney and his secretary in *Billingsley*. After sending a letter to the plaintiff's attorney asking him to dismiss the case, Ms. Neumann instructed her paralegal to enter Appellant's case in the database that she utilized for tracking cases involving Respondent. Because the paralegal inadvertently failed to enter the case into the system, Ms. Neumann forgot about the case and never followed up on her original letter or assigned the case to outside counsel. The evidence presented to the trial court simply does not establish that Respondent engaged in conduct designed to impede the judicial process. Where mistakes and internal mishaps are not intentionally or recklessly designed to impede the judicial process, they may serve as good cause to support setting aside a default judgment. *Young*, 23 S.W.3d at 733. While Ms. Neumann's actions could most certainly be construed as negligent, the trial court was well within its discretion to find that they did not rise to the level of recklessness. The trial court did not abuse its discretion in finding that Respondent had good cause for not filing an answer to Appellant's petition. Point denied.

 In his second point, Appellant claims the trial court erred in granting Respondent's motion to vacate the default judgment because Respondent failed to establish that it had a viable defense to Appellant's claims. In Respondent's motion to vacate the default judgment, Respondent asserted that it would have a meritorious defense to Appellant's claims of negligent manufacture and strict product liability based upon the fact that Respondent did not manufacture or sell the relevant piece of equipment as alleged in Appellant's petition. On appeal, Appellant argues that Respondent has not satisfied the meritorious defense requirement of Rule 74.05(d) because Appellant might be able to establish that Respondent was a corporate successor to the original manufacturer. Appellant further argues that, while the general rule in Missouri is that a corporation acquiring the assets of another corporation is not liable for the transferor's debts and liabilities, Appellant might be able to establish that an exception to that general rule applies to this case. In sum, Appellant attempts to argue the merits of Respondent's asserted defense by way of an alternative theory of liability to that pled in its petition.

 In making its argument, Appellant misconceives the provisions of Rule 74.05 related to the existence of a meritorious defense. "[T]he 'meritorious defense' requirement of Rule 74.05(d) requires only that the defaulting party 'demonstrate at least an arguable theory that would defeat the plaintiff's claim.'" *In re Marriage of Balough*, 983 S.W.2d 618, 623 (Mo.App. S.D.1999) (quoting *Thompson v. St. John*, 915 S.W.2d 350, 359 (Mo.App. S.D.1996)). "'This does not mean, however, that such a defense must be conclusively proven,'" and "'[i]t is enough that some showing be made of the existence of at least an arguable theory from which a defense may be made.'" *Newton v. Manley*, 824 S.W.2d 522, 525 (Mo.App. S.D.1992) (quoting *Gibson by Woodall v. Elley*, 778 S.W.2d 851, 855 (Mo.App. W.D.1989)). "[A] defaulting defendant satisfies the meritorious defense requirement of Rule 74.05(d) if she or he sets forth allegations which, if supported by evidence found credible by a fact-finder, would defeat the plaintiff's claim." *In re Marriage of Balough*, 983 S.W.2d at 623. "Whether the evidence supporting the proffered defense is credible is to be determined *after* the default judgment is set aside, at a subsequent trial on the merits." *Id.* at 624 n. 8 (emphasis in original). Thus, for purposes of the motion, it was beyond the province of the trial court to

determine whether the asserted defense would be successful at trial. Rather, the court's inquiry was limited to determining whether the Respondent had asserted an arguable theory of defense.

Both of the counts asserted by Appellant against Respondent in the petition for damages are founded on averments that Respondent manufactured and/or sold the boom apparatus involved in this case. In its motion, Respondent affirmatively asserted that it had a meritorious defense to Appellant's claims because it did not manufacture or sell that boom apparatus. In support of that claim, Respondent presented an affidavit from one of Respondent's engineers stating that the boom apparatus was manufactured by another company in 1976 and that Respondent had never sold products manufactured by that other company. Respondent certainly set forth allegations, which if found credible, could defeat Appellant's claims. The trial court did not abuse its discretion in finding that Respondent demonstrated an arguable theory of defense. Point denied.

The trial court's order vacating the default judgment against Respondent is affirmed, and the case is remanded for further proceedings consistent with this opinion.

All concur.